Estate of Carrie V. Pratt, deceased, Auguste G. Pratt and Stephen W. Pratt, Executors v. Commissioner.
Estate of Pratt v. Commissioner
Docket No. 108988.
United States Tax Court
1943 Tax Ct. Memo LEXIS 444; 1 T.C.M. (CCH) 627; T.C.M. (RIA) 43088; February 17, 1943
*444 Arthur Mattson, Esq., 1 Wall St., New York City, for the petitioner. James C. Maddox, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion Respondent has determined a deficiency in the estate tax liability of the Estate of Carrie V. Pratt in the sum of $121,974.90. Practically all of this deficiency results from respondent's inclusion in decedent's gross estate of the corpora of two trusts created by decedent in 1928 in the respective amounts of $173,602.47 and $510,771.40. As to the inclusion of these amounts in decedent's gross estate, the petition alleges error. In the statement attached to the notice of deficiency the respondent explains the inclusion of these amounts as follows: "The entire value of the corpus of the two trusts created by the decedent on January 4, 1928 is included in the gross estate under the provisions of section 302 (c), and/or (d) of the Revenue Act of 1926, as amended." Most of the facts have been stipulated. In addition, certain oral testimony was given at the hearing herein. Findings of Fact We find the facts to be as stipulated. In substance the facts stipulated are as follows: Carrie V. Pratt, the decedent, died testate a resident *445 of Brooklyn, New York, on October 9, 1938. Decedent's last will and testament was duly admitted to probate by the Surrogate's Court, Kings County, October 31, 1938, on which day letters testamentary were duly issued to Auguste G. Pratt and Stephen W. Pratt. Said letters testamentary remain in full force and effect. On January 4, 1928, decedent executed a trust indenture wherein and whereby she conveyed to the Mechanics Trust Company, Bayonne, New Jersey, Auguste G. Pratt and Arthur D. Pratt, certain securities in trust to pay the net income therefrom to the decedent for her life, and, upon her death, to divide the trust principal into three equal parts, such parts to be held in trust, with the income therefrom payable to the decedent's three sons, Auguste G., Arthur D., and Stephen W. Pratt, respectively. Upon the death of a son for whom a part was thus held in trust, his widow was to receive the income therefrom, and, upon her death or if she predeceased such son, upon his death, the children of such son or their issue were to take either in trust or outright depending on the circumstances. Said indenture contains no express language whereby the corpus could revest in Carrie V. *446 Pratt, the donor. Thus trust was known as "the New Jersey trust." The securities thus placed in trust had a market value of $703,407.50 as of January 4, 1928, the date of the creation of said trust. The securities comprising the principal of said trust had a market value on October 9, 1938, the date of decedent's death, of $510,771.40. Said trust indenture contained the following language, which appears at page 13 of the copy of indenture annexed to the petition herein: "The Donor, Carrie V. Pratt, acting in conjunction with the Trustees appointed under this indenture, and after her death, the Trustees acting alone, may (but only if the said three sons be living at that time and not thereafter) upon their unanimous resolution, by instrument in writing * * * modify or alter in any manner, or revoke in whole or in part, this indenture and the trust then existing, and the estate and interests in property, hereby created * * *." Except for the quoted limitation, the indenture contained no language allowing alteration, revocation or amendment in any manner or under any conditions whatsoever. Arthur D. Pratt, one of the decedent's sons and a trustee of the above mentioned trust, died *447 on December 31, 1929. By decree of the Chancery Court of the State of New Jersey (Vice Chancellor Egan) dated January 24, 1934, the above mentioned trust was held revocable to the extent of allowing the decedent, Carrie V. Pratt, to withdraw therefrom $35,000 in cash. Subsequently, in 1937, when the decedent, Carrie V. Pratt, again sought to withdraw money from the aforesaid trust, the trust instrument was again construed by the Chancery Court of the State of New Jersey. Vice Chancellor Egan, who heard the case, held that in the first construction proceeding he had been in error in holding the trust indenture to be revocable and reversed his previous decision so holding. In the equity proceeding, which resulted in the foregoing decree, all interested parties appeared and were represented by counsel. Infants were represented by guardians ad litem appointed by the court. On January 4, 1928, the date of the creation of the above mentioned trust, decedent had three sons, Auguste G., Arthur D., and Stephen W. Pratt, each of whom was then married and had children. The respective ages of decedent's sons, their wives and children as of January 4, 1928 were as follows: Auguste G. Pratt (son) 46
Ruth N.
Pratt (his wife) 46
Children: Elizabeth Pratt
20
Caroline Pratt
17
Janet Pratt
15
Ruth Pratt
13
Arthur D. Pratt (son) 45
Dorothea G.
Pratt (his wife) 40
Children: Dorothea Pratt
14
Mary Louise Pratt
16
Stephen W. Pratt (son) 34
Virginia G.
Pratt (his wife) 33
Children: Marjorie J. Pratt
9
Virginia G. Pratt
5
*448 On December 31, 1929, the date of death of Arthur D. Pratt, Auguste G. Pratt, his wife and four children were alive; Stephen W. Pratt, his wife and two children were alive; Arthur D. Pratt was survived by his widow and two children. On October 9, 1938, date of decedent's death, she was survived by two sons, Auguste G. and Stephen W. Pratt and their respective wives, by the widow of her third son, Arthur D. Pratt, by eleven grandchildren and by six great grandchildren. On January 4, 1928, decedent executed a trust indenture wherein and whereby she conveyed to The Hanover National Bank, New York, N. Y., and Auguste G. Pratt, certain securities in trust to pay the net income therefrom to the decedent for her life, with remainders over in equal parts to Auguste G., Arthur D., and Stephen W. Pratt, or, if any of them were dead, to their respective widows, or, if no widow survived, to their respective issue per stirpes. This trust was known as "the New York trust." The securities thus placed in trust had a value of $210,137.50 as of January 4, 1928, the date of the creation of said trust. The securities comprising the principal of said trust fund as of October 9, 1938, the date *449 of decedent's death, had a value of $173,602.47. The said indenture contained no express language whereby the corpus could revest in Carrie V. Pratt. The indenture contained no language allowing alteration, revocation or amendment under any conditions whatsoever. The trust indenture contained the following provision: SECOND: Upon the death of the said Donor, the Trustees are directed to set aside from the principal of the trust fund in their hands the sum of Fifty thousand dollars ($50,000) and to pay the whole or any portion of such amount unto the executors of the last Will and Testament of Carrie V. Pratt, the said Donor, upon such executor's certificate in writing that inheritance or succession taxes are due to any lawfully constituted taxing authority wherever located, regardless of whether such taxes arose through a transfer by last Will and Testament or through any trust deed, or other instrument executed by the Donor, or in any other manner, it being the Donor's wish that the tax liability, not only of herself and her estate, but of any legatee of hers, or next of kin, or transferee of any property, principal or income, or both, be likewise acquitted. * * *
Such portions, *450 if any, of the sum aforesaid directed by this article SECOND to be so set aside for the payment of inheritance and succession taxes, as shall not have been thus requisitioned by the executors of the last Will and Testament of said Carrie V. Pratt within two years after the probate of her last Will, shall, at the end of that period, be distributed in accordance with the provisions of article FIRST of this indenture. The Last Will and Testament of the decedent, Carrie V. Pratt, contains the following language: THIRTY-SECOND: I have heretofore executed and delivered a trust agreement on the 4th day of January, 1928, to HANOVER NATIONAL BANK (now CENTRAL HANOVER BANK & TRUST COMPANY) and another, as Trustees, providing for the application of a certain portion of that trust fund to the payment of any inheritance succession or estate taxes required to be paid on by estate. I, therefore, hereby direct and empower my Executors to draw from the said Trustees and to apply any amount up to fifty thousand dollars ($50,000) required to pay any succession, inheritance or estate taxes due upon my estate, whether due and payable to any state or political subdivision thereof or to the Federal Government *451 of the United States. The executors of the last will and testament of Carrie V. Pratt have never certified in writing to the above mentioned trustees that inheritance or succession taxes are due from her estate or from any legatee or next of kin of hers, or any transferee of any property from her. On January 4, 1928, the date of the above mentioned transfers in trust, decedent was seventy-one years of age, in vigorous health and active in various social and charitable affairs. When decedent died October 9, 1938, over ten years subsequent to the above mentioned transfers, her death was caused by cerebral thrombosis, from which she suffered one day, and cancer, which she had had for two years. A contributing cause was heart disease, which decedent had had for six years. Decedent's husband, Nathaniel W. Pratt, died a resident of Brooklyn, New York, March 10, 1896, leaving a Last Will and Testament, which was duly admitted to probate by the Surrogate's Court, Kings County, New York, on March 30, 1896. By the terms of his will, said Nathaniel W. Pratt bequeathed the residue of his estate in trust. To keep the same invested, and collect the income therefrom, and pay over the same *452 as follows: 1st. To pay to my father William Pratt and my mother Ann E. Pratt, so long as they or either of them shall live, the sum of Eighteen hundred dollars per annum, the same to be paid to them quarterly; the balance of said income from my estate to be paid to my wife during the term of her natural life, and after the death of my father and mother then the whole of said income is to be paid to my wife during the term of her natural life, except as hereinafter provided. The will further provided for vested remainders in the children of the testator and their issue. If any part of the estate of Nathaniel W. Pratt remained undisposed by reason of the invalidity of the trust created by this will, the three sons of the testator, Auguste G., Arthur D., and Stephen W. Pratt, all of whom survived him, would have been entitled immediately to two-thirds of said Nathaniel W. Pratt's estate outright, instead of a remainder interest therein and Carrie V. Pratt, the present decedent, would have been entitled to one-third of her husband's estate outright, instead of the income on the entire residuary estate for her life subject to the interest of her husband's parents. The testator, Nathaniel *453 W. Pratt, had been the president and a stockholder of The Babcock & Wilcox Company, a New Jersey corporation. By his last will, he authorized his trustees to distribute fifty shares of The Babcock & Wilcox Company stock to his sons, Auguste G., Arthur D., and Stephen W. Pratt, as each of them arrived at the age of twenty-five years, provided such sons were "interested" in the company and desired to become stockholders. Questions arose among the widow and three sons as to whether all of the sons qualified as legatees of 50 shares of The Babcock & Wilcox Company stock and whether these legacies consisted of 50 shares at the date of testator's death or at the dates of distribution. The Babcock & Wilcox Company, subsequent to testator's death in 1896, and prior to Carrie V. Pratt's death in 1938, had issued rights to subscribe and declared substantial stock dividends as follows: 1901
Stockholders given right to subscribe at
par up to 50% of their holdings
1904
100% stock dividend
1906
216% stock dividend, i.e., 2 1/6 shares
for each share held
1922
33 1/3% stock dividend
1938
3 for 1 stock splitup
Between March 10, 1896, the date of death of Nathaniel W. Pratt, and January *454 4, 1928, the date of the creation of the two trusts, there were issued to Carrie V. Pratt, the life beneficiary of the trust created by the will of Nathaniel W. Pratt, 3,931 shares of the capital stock of The Babcock & Wilcox Company comprising stock dividends declared on stock of said corporation owned by the estate of Nathaniel W. Pratt and the avails of the exercise of rights to subscribe for such stock accruing to said estate. Of said 3,931 shares of stock, Carrie V. Pratt transferred 3,000 shares to the two trusts, aforesaid, sold 225 shares for $25,288, and 706 shares were distributed in satisfaction of legacies under the Will of Nathaniel W. Pratt and transferred by gift. After the death of said Nathaniel W. Pratt, Edwin H. Bennett, John Gilbert Ward, and the present decedent, Carrie V. Pratt, being the persons designated as executors and trustees of said testator's will, duly qualified as such in the Surrogate's Court of Kings County. Adequate records concerning the trust were not kept. Certain rights to subscribe for additional stock accruing to the estate of Nathaniel W. Pratt and certain stock dividends declared on stock belonging to the estate of Nathaniel W. Pratt were *455 issued in the individual name of Carrie V. Pratt. Prior to 1927, Carrie V. Pratt, the present decedent, had made substantial transfers to her three sons as follows: Stephen W. Pratt
$200,000
Arthur D. Pratt
70,000
Auguste G. Pratt
27,000
The widow, Carrie V. Pratt, and her three sons, Auguste G. Pratt, Arthur D. Pratt, and Stephen W. Pratt, made a written agreement dated July 27, 1927. This agreement reads substantially as follows: MEMORANDUM OF AGREEMENT between CARRIE V. PRATT, of the Borough of Brooklyn. City and State of New York, first party, AUGUSTE G. PRATT, of Englewood. New Jersey, second party, ARTHUR D. PRATT, of Short Hills. New Jersey. third party. and STEPHEN W. PRATT, of Greenwich, Connecticut. fourth party. WHEREAS, the first party is the widow of Nathaniel W. Pratt. who died in the Borough of Brooklyn, City of New York, on or about the 10th day of March, 1896, and the other parties are the sons of said Nathaniel W. Pratt, and the first party; and WHEREAS, said Nathaniel W. Pratt left a last will and testament which was, on the 30th day of March, 1896, duly admitted to probate in the Surrogate's Court in the County of Kings, a copy of which will is *456 hereto annexed and marked 'Exhibit A'; and * * *
WHEREAS, Nathaniel W. Pratt, deceased, left a certain estate which as aforesaid, has been and is being administered by said trustees and the income therefrom paid unto his widow, the first party; and * * *
WHEREAS, the will of Nathaniel W. Pratt contained the following clause: I hereby authorize my trustees to convey to any of my sons when they arrive at the age of twenty-five years fifty (50) shares of the stock of the Babcock & Wilcox Company of New Jersey, provided such sons are interested in said company and desire to become stockholders in the same. and WHEREAS, the second party and the third party are interested in Babcock & Wilcox Company of New Jersey as officers or employees thereof, and the fourth party is not so employed, and a question has arisen as to whether said fourth party is interested in said corporation in the sense in which that expression is used in the will of said Nathaniel W. Pratt and entitled to the fifty (50) shares of stock of the corporation mentioned in said will; and WHEREAS, the second party has received an amount of stock of Babcock & Wilcox Company of New Jersey equivalent to the original *457 fifty (50) shares (as increased by stock dividends) provided for by the will of said Nathaniel W. Pratt; and the third party has received an amount of said stock which falls short by eighty (80) shares of being the equivalent of the original fifty (50) shares (as increased by stock dividends) mentioned in said will; and the fourth party has received an amount of said stock which falls short by two hundred eighty-eight (288) shares of being the equivalent of the original fifty (50) shares (as increased by stock dividends) mentioned in said will; and WHEREAS, it is the desire of the parties hereto that no question shall remain unsettled in connection with the administration of the estate of Nathaniel W. Pratt aforesaid, and they have agreed among themselves not to raise the question of whether the fourth party, Stephen W. Pratt, is interested in said Babcock & Wilcox Company of New Jersey, as that term is employed in the will, and entitled to receive the equivalent of fifty (50) shares mentioned therein, but to accord to him, as well as the third party, Arthur D. Pratt, on the final distribution of said estate, the amount of shares of said corporation necessary to make up the equivalent *458 of the original fifty (50) shares (as increased by stock dividends) mentioned in the will of said Nathaniel W. Pratt; and WHEREAS, no judicial settlement of the accounts of the trustees of the estate of Nathaniel W. Pratt has taken place and it is deemed by all the parties hereto to be to their mutual interests that the present condition of the estate be fixed and finally determined; and WHEREAS, certain changes in the securities in which the estate of Nathaniel W. Pratt was originally invested have taken place and certain stock dividends have been declared and paid on certain of those securities, and it is impracticable to determine at the present time whether the distribution of said stock dividends between the principal of the estate of Nathaniel W. Pratt and the first party his widow as life beneficiary, as heretofore made by the trustees of said estate, is correct; and WHEREAS, all of the parties are satisfied with the said distribution as heretofore made and desire that such distribution shall be deemed final and binding upon them and each of them; and WHEREAS, the first party, Carrie V. Pratt, has advanced to her said sons the following amounts: TO AUGUSTE G. PRATT from *459 the year 1908 to date, the sum of $27,000.00 To Arthur D. Pratt, from the year 1917 to date, the sum of 70,000.00 To Stephen W. Pratt, from the year 1917 to date, the sum of 200,000.00 and WHEREAS, all the parties hereto are of full age and of sound mind and have agreed among themselves that the present condition of the estate shall be deemed to be that set forth in Exhibit B hereto annexed; NOW, THIS AGREEMENT WITNESSETH that, in consideration of the premises, the parties hereto agree, each with the other, as follows: 1. That the present condition of the estate is correctly set forth in Exhibit B hereto annexed, which the parties agree represents the principal, and the whole thereof of the estate of Nathaniel W. Pratt with which the trustees are chargeable. 2. The first party agrees with the other parties that she has received all income from the said estate, properly payable to her, up to the date of this agreement. 3. That upon the death of Carrie V. Pratt and the final distribution of the estate of Nathaniel W. Pratt, the third party Arthur D. Pratt, shall first received eighty (80) shares of the stock now issued and outstanding of Babcock and Wilcox Company of New Jersey, *460 and the fourth party, Stephen W. Pratt, in addition to the eight thousand dollars ($8,000) provided for him by the will of his father, shall receive two hundred eighty-eight (288) shares of said stock. * * *
That the second, third and fourth parties acknowledge their indebtedness to the first party as hereinbefore set forth. Nothing herein contained shall prevent the first party from disposing of her own property by last will and testament, or by the creation of one or more trusts during her lifetime, nor from providing in said trusts for the payment of the income from her property, or the principal thereof, as she may be advised, to her three sons, or to their wives, or to the children of the said three sons, nor from making appropriate provisions in any deed of trust she may make for the repayment to her estate of the sums due her as aforesaid from her three sons and of any amounts in addition thereto, which she may hereafter advance to any one or more of her said three sons. From the oral testimony adduced at the hearing we find the following facts: In 1927, Auguste Pratt consulted with one Henry Escher who was an attorney and a friend of the family concerning the financial *461 problems of the Pratt family. Escher advised him that there was doubt concerning the validity of the residuary trust created under the will of Nathaniel Pratt, that because of the muddled condition of the family finances under the administration of Carrie V. Pratt, it would be difficult to segregate those securities properly belonging to this residuary trust, and in view of all the circumstances, it would be advisable for an amicable settlement to be made by Auguste Pratt, his mother, and his brothers. This advice was discussed by the decedent and her sons, and resulted in the agreement in July, 1927, above set out, which was designed to settle all questions concerning the estate of Nathaniel Pratt in which the decedent and her three sons were interested. This agreement was signed by the sons of decedent with the understanding that decedent would execute the trust instruments which were executed by her on January 4, 1928. These trust instruments were executed by decedent pursuant to a general oral agreement between decedent and her sons which had as its general object the settlement of all disputes and questions concerning the family finances, and pursuant to which the written agreement *462 of July, 1927, was also entered into. Opinion KERN, Judge: The respondent contends that the execution by decedent of the two trusts on January 4, 1928, constituted transfers intended to take effect in possession or enjoyment at or after death by reason of section 302 (c) of the Revenue Act of 1926, as amended by section 803 (a) of the Revenue Act of 1932, [1] and that therefore the corpora of the two trusts are includable in decedent's gross estate. Respondent makes one alternative contention with regard to the provision contained in the so-called "New York trust" which directed the trustees upon the death of decedent to set aside from the principal of the trust fund the sum of $50,000 to pay the whole or any part thereof to the executors of decedent's will for the payment of inheritance, succession or estate taxes. Respondent contends that this provision requires the inclusion of at least $50,000 in decedent's gross estate. *463 Petitioners contend that the trusts were irrevocable and were not to take effect in possession or enjoyment at or after decedent's death, and even if they were, the corpora of the trusts would still not be includable in decedent's gross estate since the transfers to the trusts were made in good faith "for an adequate and full consideration in money or money's worth. Petitioners also deny that the $50,000 subject to requisition from the "New York" trust by the executors of decedent's will for the payment of inheritance or estate taxes is includable in decedent's gross estate. Respondent's argument to the effect that the execution of the two trusts constituted transfers intended to take effect in possession or enjoyment at or after death, is predicated entirely upon the proposition that the case of (under the rule of which respondent concedes that the corpora of the trusts here involved would not be includable in decedent's estate) was in effect, although by implication, overruled by the more recent case of . As authority for this contention respondent relies *464 upon . This case, however, has been recently overruled by us in , and we now adhere to the view that the case of , was not overruled in effect by the Hallock case, but still represents the law applicable to the instant case. Therefore, respondent's argument on the principal issue here presented fails and we conclude that the execution of the two trust instruments here in question, by which decedent grantor reserved the income therefrom during her life, did not constitute transfers intended to take effect in possession or enjoyment at or after death. It therefore becomes unnecessary to consider petitioners' contention that the transfers in trust were made in good faith for an adequate consideration in money or money's worth. Respondent makes no argument to the effect that the corpora of the trusts are includable in decedent's estate by reason of any power retained by her and existing at the time of her death to alter or revoke the trusts in question. No such power ever existed in the *465 so-called "New York" trust, and no such power existed in the so-called New Jersey trust after the death of Arthur D. Pratt, one of the trustees, on December 31, 1929, some nine years before the death of decedent. This has been held by a state court of competent jurisdiction in a proceeding the validity of which has not been questioned by respondent. We come now to respondent's alternative contention with regard to the $50,000 directed in the "New York" trust instrument to be paid to decedent's executors for the payment of inheritance, succession or estate taxes upon the written request of such executors, and which decedent authorized and directed in her will to be drawn by such executors for this purpose. Upon this question both parties cite only one case, , affirmed . In spite of this unanimity of the parties, we are of the opinion that this case is not in point. Here we have a chose in action created by decedent during her lifetime in favor of and for the benefit of her estate, the collection of which by her executors is authorized by her will. A case more in *466 point is . Pursuant to the holding of that case (p. 539) we conclude that by requiring the trustee to pay to her executors from the corpus of the trust in question such portion of $50,000 as was necessary to pay any inheritance, succession or estate taxes levied against the estate or any of her heirs or legatees, the decedent "gave [her] estate the benefit of whatever value such claims would have at the time of [her] death." The value of such claim would be $50,000 or whatever lesser amount would be necessary to pay the inheritance, succession or estate taxes. In view of the fact that the total gross estate of decedent amounted to only $691,266.63, according to respondent's determination and of this amount the sum of $684,373.87 represented the value of the corpora of the two trusts here involved which we have determined are not to be included in decedent's gross estate for taxation under the Federal estate tax, it seems obvious that the inheritance, succession and estate taxes payable by decedent's executors or her heirs or legatees would be in an amount considerably less than $50,000. Therefore, the value *467 of the claim for the payment of such taxes given by decedent to her estate would be an amount considerably less than $50,000. What the value is will be determined in the computation of the tax and to the extent of that value, it is includable in decedent's gross estate. Decision will be entered under Rule 50. Footnotes
1. SEC. 302 [as amended] The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated, outside of the United States - * * * * *
(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, * * * intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life * * * the possession or enjoyment of, or the right to the income from, the property * * * except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * *↩