# Staunton

COMMONWEATH OF VIRGINIA, DEPARTMENT OF TAXATION v. JAMES
F. LEWIS, JR., ET AL., ADMINISTRATORS, C.T.A., ETC.

September 8, 1967.

Record No. 6492.

Present, All the Justices.

*Richard N. Harris, Assistant Attorney General (Robert Y. Button,
Attorney General*, on brief), for plaintiff in error.

*William A. Perkins, Jr.; Frederick L. Russell (McGuire, Woods
and Battle*, on brief), for defendants in error.

GORDON, J., delivered the opinion of the court,

About two years before her death, Page L. Jennings made a gift of certain assets on which the State of Virginia assessed and collected a gift tax. These assets were included in her estate for death tax purposes because the gift was found to have been made in contemplation of death. Mrs. Jennings's Administrators c.t.a. claimed a credit against the Virginia death tax in the amount of the gift tax previously paid, which the Department of Taxation denied. Upon the Administrators' application the trial court held that the estate was entitled to the credit. The Commonwealth appeals.

For an understanding of the controversy we will describe the alternate death taxes imposed by the State of Virginia under Code § 58-152 (and related sections) and Code § 58-162. Va. Code Ann. §§ 58-152, -162 (Repl. vol. 1959). We will also identify the section under which the death tax was assessed against Mrs. Jennings's estate.

Code § 58-152 imposes death taxes upon the shares passing to beneficiaries under a decedent's will. Code § 58-162 imposes an alternate State death tax designed to "pick-up" for the State treasury the maximum federal estate tax credit allowable under the United States Internal Revenue Code for death taxes paid to the State. 26 U.S.C. § 2011 (1964). Code § 58-162, the "pick-up" statute, fixes the tax levied thereunder at an amount equal to the maximum federal credit.[1]

---

1. "§ 58-162. Minimum tax not to be less than federal credit or eighty per cent of federal tax.—The minimum tax imposed and collectible by this Commonwealth upon the transfer at death of the estate of a resident decedent shall in no case be less than the credit allowed by subchapter A of chapter 3 of the Internal Revenue Code of the United States on account of estate, inheritance, legacy or succession taxes actually paid to any state or territory or the District of Columbia in respect of any property included in the gross estate. Such minimum inheritance tax imposed by this State, which is hereby imposed by this chapter, shall in no case be less than eighty per centum of the tax imposed by such chapter of the Internal Revenue Code . . . .

" * * *

"The rules and regulations for determining the amount of the net estate upon which the tax imposed by this Commonwealth, as aforesaid, shall be based, shall be the same rules and regulations adopted by the commissioner of internal revenue for determining the net estate under the laws of the United States.

"In every case in which the tax imposed by the preceding sections of this chapter is greater than the tax imposed by this section, this section shall not apply. In every case in which the tax imposed by this section is greater than the tax imposed by the preceding sections of this chapter, this section shall apply and such tax so imposed shall be in lieu of the tax imposed by the preceding sections.

"This section shall always be so construed as not to increase the total amount of inheritance taxes, State and federal, payable upon the estates of decedents, the only object of this section being to take full advantage of the credit allowed by the chapter of the Internal Revenue Code hereinabove mentioned; and if such chapter should be in any manner affected by subsequent legislation of Congress, this section shall be

Code § 58-162 provides that a death tax shall be assessed under Code § 58-152 if the maximum federal credit is smaller than the death taxes assessable under Code § 58-152. But where, as was true for Mrs. Jennings's estate, the death tax assessable under the "pick-up" statute is greater than the death tax assessable under Code § 58-152, the State assesses a death tax under the "pick-up" statute.

Turning to the facts of this case in more detail, we find that in 1959 Mrs. Jennings transferred certain assets to an *inter vivos* trust. Following Mrs. Jennings's death in 1961 her Administrators c.t.a. filed a gift tax return and paid a Virginia gift tax of $24,850 on the transfer of those assets. They also filed a Virginia inheritance tax return, on the basis of which the Department of Taxation assessed a tax of $117,695.44 against her estate under the "pick-up" statute.

After an audit the Internal Revenue Service determined that Mrs. Jennings made the 1959 transfer in contemplation of death. The Service therefore included the assets transferred in 1959, on which the Virginia gift tax of $24,850 had been paid, in the gross estate for federal estate tax purposes and increased the federal estate tax assessment.

Because of this adjustment and other adjustments made by the federal authorities, the maximum available federal credit was increased from $117,695.44 to $183,329.12. The Department of Taxation therefore increased the Virginia death tax assessment to $183,329.12. The Administrators voluntarily paid $158,479.12. They contended that such payment, together with a $24,850 gift tax credit which the Administrators claimed to be available under Virginia law, satisfied the total death tax owing. After the Department of Taxation denied the credit, the Administrators paid $24,850 under protest. They then instituted this proceeding seeking a refund of $24,850, which the trial court granted.

Mrs. Jennings's Administrators claimed the gift tax credit under Code § 58-158:

"§ 58-158. Credits.—In case a tax has been imposed under chapter 6 of this title upon any gift and thereafter upon the death of

so construed as to take full advantage of such credit as the laws of the United States may allow." Va. Code Ann. § 58-162 (Repl. vol. 1959).

[The credit formerly allowed by subchapter A of chapter 3 of the Internal Revenue Code is now allowed by 26 U.S.C. § 2011 (1964), which sets forth the available maximum credit in tabular form rather than by reference to eighty per centum of the tax imposed by former chapter 3.]

the donor the amount thereof is required by any provision of this chapter to be included in the gross estate of the decedent then there shall be credited against and applied in reduction of the inheritance tax which would otherwise be chargeable against the estate of the decedent or the respective shares of the beneficiaries thereof under the provisions of this chapter an amount equal to the tax paid with respect to such gift." Va. Code Ann. § 58-158 (Repl. vol. 1959).

The Commonwealth argues that the gift tax credit provided under Code § 58-158 is available only when death taxes are assessed under Code § 58-152, not when the tax is assessed under the "pick-up" statute.

The Commonwealth bases its argument in part on the distinction between an inheritance tax and an estate tax. The Commonwealth points to the language of Code § 58-158 that allows the gift tax credit "in reduction of the *inheritance tax*" that would otherwise be assessable. [Emphasis supplied.] The Commonwealth says that a tax assessed under Code § 58-152 is truly an inheritance tax because it is a succession tax imposed upon the beneficiary's right to succeed to a share of the estate, while the death tax assessed under the "pick-up" statute is truly an estate tax because it is imposed on the decedent's right to transmit property. See *Commonwealth* v. *Morris*, 196 Va. 868, 871, 86 S.E.2d 135, 137 (1955), cited by the Commonwealth for these propositions.

[1] We agree with the Commonwealth's distinction between an inheritance tax and an estate tax. And we admit that the "pick-up" statute is truly an estate tax, a tax imposed upon the right to transmit property. But this admission does not lead to the conclusion advocated by the Commonwealth.

[2] The Virginia Legislature saw fit to label the tax imposed under the "pick-up" statute an "inheritance" tax. It applied this label in the words of the statute itself: "Such minimum *inheritance tax* imposed by this State, which is hereby imposed by this chapter * * * This section shall always be so construed as not to increase the total amount of *inheritance taxes, State* and federal, payable upon the estates of decedents * * *" (Emphasis supplied; see Code § 58-162, quoted in part in footnote 1, *supra.*)

The language of a statute should of course be given the meaning intended by the Legislature. So when the Legislature directed in

Code § 58-158 that certain gift taxes previously paid "shall be credited against and applied in reduction of the inheritance tax" otherwise collectible, the Legislature intended to refer not only to the true inheritance tax levied under Code § 58-152, but also to what it had labeled the "inheritance tax" levied under the "pick-up" statute.

The Legislature made its intent even clearer by these words in Code § 58-158: "in reduction of the inheritance tax which would otherwise be chargeable against the *estate of the decedent* or the respective shares of the beneficiaries thereof under the provisions of this chapter". [Emphasis supplied.] These words make it clear that the credit allowed in Code § 58-158 applies to either of two alternate taxes: The emphasized words refer to the tax imposed under the "pick-up" statute, a tax on the estate; the succeeding words refer to the tax imposed under Code § 58-152, a tax on the beneficiaries' shares.

Finally on this point, Code § 58-158 makes the gift tax credit applicable to any tax chargeable under "this chapter". The "pick-up" statute, as well as the other sections we have discussed, appears in "this chapter", chapter 5 of Title 58 of the Code (§§ 58-152 through -217.14).[2]

[3] The Commonwealth contends that the Department of Taxation has consistently interpreted Code § 58-158 as providing no gift tax credit when death taxes are imposed under the "pick-up" statute. The Commonwealth therefore asks us to interpret Code § 58-158 consistently with the administrative practice. Assuming *arguendo* that the administrative practice was proved in this case, we can give it no effect because we find no ambiguity in Code § 58-158. To give effect to the claimed administrative practice would permit administrative action to override legislative intent as disclosed by the statute.

---

2. The 1934 Act, which established the gift tax credit, made the credit applicable to any inheritance tax chargeable under "chapter nine of the Tax Code of Virginia" instead of to any inheritance tax chargeable under "this chapter", as provided in the present Code § 58-158. Va. Acts of Assembly 1934, ch. 137 at 188-9; Va. Tax Code Ann. § 120(13) (Supp. 1934). When the 1934 Act was passed the "pick-up" statute, as well as the predecessor to Code § 58-152, was part of chapter 9 of the Tax Code dealing with inheritance taxes, but the Act made the gift tax credit section part of chapter 9A of the Tax Code dealing with gift taxes. In the 1950 recodification the gift tax credit section (formerly § 120(13) of the Tax Code, recodified as Code § 58-158), as well as the "pick-up" statute and Code § 58-152, was made part of chapter 5 of Title 58 dealing with inheritance taxes. So in Code § 58-158 the revisors substituted the words "this chapter" for the words "chapter nine of the Tax Code".

*Commonwealth* v. *Greyhound Lines, Inc.*, 206 Va. 550, 557, 145 S.E.2d 206, 211 (1965); see *Huffman Const. Co.* v. *Unemployment Compensation Commission*, 184 Va. 727, 740, 36 S.E.2d 641, 647 (1946).

What has been said moves us to the conclusion that the gift tax credit provided under Code § 58-158 is available to estates, like Mrs. Jennings's estate, that are taxed under the "pick-up" statute. When the assets on which the $24,850 gift tax was paid were included in Mrs. Jennings's estate for death tax purposes, the $24,850 already paid constituted in effect an advance payment on account of the Virginia death tax. See *Smith* v. *Shaughnessy*, 318 U.S. 176, 180, 63 S.Ct. 545, 546-47, 87 L.ed. 690, 692-93 (1943).

Some doubt might persist, however, if under federal law the advance payment of $24,850 does not constitute part of the death tax "actually paid" to the State so as to qualify for the federal estate tax credit under 26 U.S.C. § 2011 (1964). If not, the federal credit would be $158,479.12 ($183,329.12 less $24,850) instead of the maximum available credit of $183,329.12. Yet the Virginia "pick-up" statute states its clear intention "to take full advantage [for the State treasury] of the credit allowed by the chapter of the Internal Revenue Code hereinabove mentioned [now 26 U.S.C. § 2011 (1964)]". See the last paragraph of Code § 58-162, quoted in footnote 1, *supra.*

Any doubt on this score has been dispelled by a technical advice memorandum, dated July 23, 1965, from the National Office, Internal Revenue Service, to the District Director of Internal Revenue, Richmond, Virginia, concerning the Estate of Page Lewis Jennings. The memorandum recites the Administrators' position that the total Virginia inheritance tax liability of $183,329.12 should be satisfied by the cash payment of $158,479.12 and a gift tax credit of $24,850. It also recites the Administrators' desire, if successful in establishing their right to the gift tax credit by litigation, to know the position of the Internal Revenue Service "with regard to the allowance of $183,329.12 as the credit for state death taxes 'actually paid' ". The memorandum concludes:

". . . [I]f the State of Virginia certifies payment of inheritance taxes in the amount of $183,329.12 made on behalf of the above-named estate, and the latter claims credit therefor within four years after the filing of the estate tax return, we hold that the maximum amount of the credit authorized by section 2011 will be allowed."

In view of our holding that the $24,850 gift tax paid by Mrs. Jennings's Administrators constituted under Code § 58-158 an advance payment on account of the Virginia death tax assessed against her estate, we see no reason why the State Tax Commissioner should decline to issue the certificate referred to in the technical advice memorandum.

*Affirmed.*