ESTATE OF GEORGE E. P. GAMBLE, CROCKER NATIONAL BANK,
EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT

Docket No. 8352–74.    Filed March 16, 1978.

*Robert C. Alexander*, for the petitioner.
*Michael R. McMahon*, for the respondent.

### OPINION

BRUCE, *Judge:* Respondent determined a deficiency of
$635,005.87 in the estate tax liability of the Estate of George E.
P. Gamble. Practically all of the deficiency results from
respondent's including in the value of the gross estate of the
decedent an amount paid by the decedent as California State
gift taxes, for which, subsequent to his death, the State allowed
a credit against California State inheritance taxes.[1] The

---

[1]The remainder of the deficiency results from respondent's partial disallowance of the amount
claimed by petitioner as a credit for State death taxes actually paid. Sec. 2011, I.R.C. 1954.

correctness of respondent's action presents the only issue for decision.

All of the facts have been stipulated, and, with certain corrections appearing below, they are found accordingly.

George E. P. Gamble died on May 20, 1972. The petitioner is the executor of his estate. The Federal estate tax return here involved was filed with the Office of the Internal Revenue Service at San Francisco, Calif., where petitioner's principal office is also located.

Prior to his death, the decedent's affairs were managed by a court-appointed conservator, Launce E. Gamble, a nephew of the decedent. On September 10, 1971, through his conservator and with court approval, the decedent made gifts valued at $5,207,737.56. He paid Federal gift taxes in the amount of $2,800,766.94 and California gift taxes in the amount of $861,303.15 with respect to those gifts. The gifts were made in contemplation of his death.

The gross transfers subjected to California inheritance taxes included the gifts made in contemplation of death, the State gift taxes of $861,303 and $2,553,485 of the Federal gift taxes paid with respect to the gifts. The latter two items were included in the State's inheritance tax base as uninventoried assets termed prepaid California inheritance taxes and prepaid Federal estate taxes, respectively. Petitioner's total liability for taxes denominated by the State of California as State inheritance taxes was $4,979,852. Of this liability, $4,118,549 was paid in cash by the estate. The remainder, $861,303, was satisfied by way of a credit for the State gift taxes paid on the gifts made in contemplation of death.

In computing the value of the decedent's gross estate in the Federal estate tax return, petitioner included the date of death value of the gifts, $6,885,637.52. It did not include in the value of the gross estate any amount corresponding to either the Federal or California gift taxes paid with respect to the gifts.

In his notice of deficiency, respondent increased the value of the decedent's gross estate by $861,303.15, the amount paid by

---

Subsequent to issuance of the notice of deficiency, petitioner provided respondent with evidence substantiating the payment of State inheritance taxes in excess of the amount allowed in the deficiency notice, and respondent concedes that an upward adjustment in the amount of the credit is appropriate.

the decedent as State gift taxes. He explained the adjustment in part as follows:

By reason of California State law, it is held that the gift taxes paid on the transfers represent an advance payment on the State Inheritance Taxes assessable against the estate, therefore the amounts so paid represent an asset of the decedent's gross estate in accordance with the provisions of section 2033 of the Internal Revenue Code of 1954, as amended.

Petitioner's position is, predictably, that the value of the decedent's gross estate should not be increased by the amount of the State gift taxes he paid during his lifetime. It maintains that because the gift taxes were paid by the decedent as the result of completed taxable transactions and the funds so used were not subject to recoupment, there is nothing to be included as an asset in the decedent's gross estate.

Respondent's position on brief is essentially the application of Rev. Rul. 75–63, 1975–1 C.B. 294,[2] to the facts of this case. He

---

[2]Rev. Rul. 75–63 provides as follows:

"Advice has been requested concerning the inclusion in the gross estate for Federal estate tax purposes, under section 2033 of the Internal Revenue Code of 1954, of State gift taxes paid by the donor-decedent on gifts of property later included in his gross estate as transfers in contemplation of death.

"Nine months before his death the decedent made substantial gifts of property to his children. By reason of these inter vivos transfers, the decedent became liable for State gift taxes. Several months prior to his death, the decedent filed the State gift tax return and paid the taxes shown hereon [sic] to be due.

"After the decedent's death, his executor filed a State inheritance tax return in which the value of the gifts was included as part of his gross estate as property transferred in contemplation of death. The gross amount of the State inheritance tax found to be due was satisfied partly through an allowable gift tax credit for the State gift taxes paid by reason of the gifts. The remainder was paid in cash. Under the applicable State law, any gift tax paid on a gift that is included in the donor-decedent's gross estate constitutes an advance payment of State inheritance tax.

"The value of the donated property was also includible under section 2035 of the Code as a part of the decedent's gross estate for Federal estate tax purposes. A State death tax credit authorized by section 2011 of the Code was allowable against the Federal estate tax, in the gross amount of State inheritance tax before the application of the State gift tax credit, upon certification by the State taxing authority that such gross amount had been paid on behalf of the decedent's estate. See Rev. Rul. 71–355, 1971–2 C.B. 334.

"Section 2033 of the Code provides that the value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death. Under section 2053(c)(1)(B), death taxes may not be deducted in determining the value of the decedent's taxable estate.

"If an inter vivos transfer originally subject to a State gift tax is ultimately subject to an inheritance tax, the gift tax credit provisions contained in the State's law make the payment of such gift tax tantamount to a prepayment of, or a down payment on, the inheritance tax. *Commonwealth, Department of Taxation v. Lewis,* 208 Va. 221, 156 S.E. 2d 589 (1967); *In re Estate of Kirshbaum,* 268 Cal. Appl. 2d 155, 73 Cal. Rptr. 711 (1968); cf *McGill v. Oklahoma Tax Commission,* 258 P. 2d 1180 (1953); *In re Estate of Shivers,* 105 N.J. Super. 242, 251 A. 2d 771 (1969). An inheritance tax is not a property tax imposed upon a decedent's entire estate and the estate is not primarily liable for its

relies solely upon section 2033,[3] which is set forth below in toto:

SEC. 2033. PROPERTY IN WHICH THE DECEDENT HAD AN INTEREST.

The value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death.

The question that must be answered, then, is quite narrow, and it is whether, as a result of paying his gift taxes for which a credit against State inheritance taxes was allowed, the decedent had an interest in property at the time of his death.

Although this is our first opportunity to pass directly upon the issue, we recently had occasion to express our opinion on its resolution. In a Court-reviewed case, *Estate of Lang v. Commis-*

---

payment; rather, an inheritance tax is a separate succession tax levied against each of a decedent's beneficiaries (or transferees) for the privilege of receiving a share of his estate, either by inheritance, by testamentary disposition, or by certain inter vivos transactions that are regarded by the law as taking effect in possession or enjoyment at the death of the transferor.

"If the value of property subject to an inter vivos transfer is later included in the donor-decedent's estate, then the State gift tax liability that arose at the time of the inter vivos transaction is only a contingent liability of the donor that disappears upon his death and reappears as a post-death inheritance tax liability of the transferee(s) of the property. See *McGill*, above. By reason of the privity that exists between the decedent and the transferee of his property, a gift tax payment made by the decedent that becomes a prepayment or downpayment on the inheritance tax liability of his beneficiary constitutes an asset created by the decedent during his lifetime that inures to the benefit of his estate after his death.

"A chose in action created by a decent [sic] during his lifetime in favor of, and for the benefit of, his estate is includible in the gross estate as property owned by the decedent at the time of his death. *Estate of Carrie V. Pratt*, 1 CCH Tax Ct. Memo 627 (1943), petition for review dismissed (2d Cir. 1944). In *Pratt* the decedent created during her lifetime an otherwise nontaxable trust under the terms of which she directed the trustees to turn over to her executor any amount up to $50,000 necessary to pay State and Federal death taxes. The court concluded that the result of this arrangement was to give to the decedent's estate the benefit of whatever value the claim against the trustee had at her death. This amount was held to constitute an asset includible in her gross estate. Similarly, in those jurisdictions where the lifetime payment of State gift taxes on the transfer of property subsequently included in the donor's gross estate constitutes a prepayment of inheritance taxes, such prepayment by the donor creates an asset the value of which accrues to his estate upon his death.

"A donor-decedent who makes a taxable inter vivos gift depletes his estate not only by the amount of the gift, but also by the amount of the gift tax paid by him prior to his death. Where the value of the donated property is later included in the donor-decedent's gross estate by reason of the nature of the transfer, and the State gift tax paid qualifies as a State death tax that, in turn, is allowable as a credit against the Federal estate tax under section 2011 of the Code, the failure to restore the amount of the State gift tax payment to his estate would be tantamount to the allowance of both a deduction and a credit for State death taxes paid. This is a result that Congress clearly intended to avoid by enacting section 2053(c)(1)(B) (which proscribes the deduction of an estate, succession, legacy, or inheritance tax from the gross estate).

"Accordingly, the donor-decedent's lifetime payment of State gift taxes on the inter vivos transfers of property later included in his gross estate as transfers in contemplation of death, which payment constituted a prepayment of the State inheritance tax, created an asset for the benefit of his estate, the value of which is includible in his gross estate for Federal estate tax purposes under section 2033 of the Code."

[3] Except where otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the time in issue.

*sioner,* 64 T.C. 404 (1975), appeal docketed, No. 76–1543 (9th Cir., March 15, 1976), the question for decision was whether the taxpayer was entitled to a deduction under section 2053 for State gift taxes paid after the decedent's death, where the State inheritance taxes imposed were partially satisfied with an allowable credit for those same State gift taxes. In the course of rejecting the Commissioner's theory as to why the taxes could not be deducted, which theory is the subject of Rev. Rul.71–355, 1971–2 C.B. 334, we discussed Rev. Rul 75–63 and concluded, contrary to respondent's position here, "that the State gift tax paid prior to death on a gift in contemplation of death is not an asset the value of which is includable in the gross estate." *Estate of Lang v. Commissioner, supra* at 411.[4]

Respondent contends, however, that our conclusion in *Estate of Lang* concerning the validity of Rev. Rul. 75–63 is erroneous. He asserts that the ruling "expressly applies only where the gift tax credit provisions of state law make the payment of a state gift tax a prepayment of state inheritance tax" and that in *Estate of Lang,* we were not "faced with a state judicial determination of the issue there before the Court." He further asserts that "whether the state gift tax liability is termed 'contingent' or 'absolute' does not affect its value as a property interest of the decedent at his death." Finally, he asserts that we erroneously assumed in *Estate of Lang* that "a state gift tax payment is entitled to the same Federal tax treatment given to a Federal gift tax payment." Each of these assertions will be answered in turn.

The thrust of respondent's argument is that by paying his gift taxes for which subsequent to his death the State allowed a credit against inheritance taxes, the decedent prepaid the inheritance taxes. A prepaid liability being an asset, respondent

---

[4]Our discussion of Rev. Rul. 75–63 in *Estate of Lang v. Commissioner,* 64 T.C. 404, 410 (1975), appeal docketed, No. 76–1543 (9th Cir. 1976), is sufficiently brief to be restated almost in its entirety:

"Rev. Rul. 75–63 theorizes that the State gift tax paid on a gift in contemplation of death is only a *contingent liability* of the donor that disappears upon his death and/or is transformed into an inheritance tax liability. As a prepayment of inheritance tax, the ruling concludes, the gift tax is an asset of the estate the value of which is includable in the decedent's gross estate. In fact, however, the gift tax is an unconditional liability of the donor, or his estate upon his death. It is due in all events. If the donor or his estate fails to pay the gift tax, penalties are imposed whether the donor lives or dies, and whether or not by the time of death there is any inheritance tax against which to credit it. The gift tax is not rendered a contingent liability by the fact that the inheritance tax, if any, may under certain circumstances be reduced by the amount of the gift tax paid, or due and owing. [Fn. ref. omitted.]"

concludes that the decedent created an asset that accrued to the benefit of his estate on his death, and the value of that asset is includable in the value of his gross estate. Respondent's argument does not withstand analysis.

The foremost flaw in respondent's theory is that while it aptly describes the *effect* of the decedent's gift tax payments, it ignores the basic requirement of section 2033 that the decedent have an interest in property which passes from him at the time of his death. As we stated in *Estate of Barr v. Commissioner*, 40 T.C. 227, 232 (1963), with respect to section 2033:

> It will be observed that this section relates only to *interests in property* which the decedent had at the time of his death. And, as the Supreme Court pointed out in the leading case of *Knowlton v. Moore*, 178 U.S. 41, the justification for the Government's power to subject such interests to the Federal estate tax rests on the principle that such interests *pass* from the decedent at death, and that the estate tax is an excise tax on the privilege of transmitting property at death to the survivors of the decedent. To the same effect see *New York Trust Co. v. Eisner*, 256 U.S. 345.

Section 2033 is not a "catch all" provision bringing within the gross estate the value of all benefits which accrue to others upon one's death. *Connecticut Bank & Trust Co. v. United States*, 465 F.2d 760 (2d Cir. 1972); *Estate of Tully*, 528 F.2d 1401 (Ct. Cl. 1976). It requires the existence of property "beneficially owned by the decedent at the time of his death." Sec. 20.2033–1(a), Estate Tax Regs. We find no support for respondent's conclusion that the requisite property interest existed under California law.

At issue in *In re Estate of Schmalenbach*, 15 Cal. 3d 102, 539 P.2d 58, 123 Cal. Rptr. 490 (1975), was "whether state and federal gift taxes accrued and payable at the time of death and paid after death on transfers subject to California inheritance and federal estate taxes are deductible in determining the clear market value of the estate upon which the state inheritance tax is computed." Crucial to the court's determination that neither gift tax obligation qualified for deduction was that "the payment of the aforementioned gift tax obligations does not reduce the net amount of the benefit actually received" by the transferee, a requirement for deductions imposed by Cal. Rev. & Tax. Code sec. 13981 (West 1970). Payment of the gift taxes did not reduce the net benefit to the transferee because each respective taxing jurisdiction allowed a credit against the estate and inheritance taxes imposed for the gift taxes paid, and

neither the estate nor inheritance taxes were deductible in determining the net amount of the transfer. In footnote 10 of its opinion, the California court stated as follows:

> The instant case does not involve a situation wherein a transferor paid a gift tax prior to death, and the transfer was included with those transfers subject to the inheritance tax. In such a case, *if the state gift tax paid is allowed as a credit against the inheritance tax, as it must be (§ 14059), it would necessarily also be deemed an asset of the estate (e. g., a prepaid tax liability).* (See *Estate of Giolitti, supra,* 26 Cal. App.3d 327, 338, 103 Cal. Rptr. 38). Were it otherwise the heirs of transferees of the decedent would nevertheless receive the benefit of the challenged and disallowed deduction through the mechanics of a reduction in the appraised market value of the decedent's estate by the amount of the gift tax paid before death, such would constitute failure to comply with the legislative intent that "every transfer made in lieu of or to avoid the passing of property by will or the laws of succession" be subjected to the inheritance tax. (§ 13648.) [Emphasis added.]

Respondent submits that a State classification of a State-created right must be given weight, and relying upon the underscored language in the above quotation, submits that "the California Supreme Court has classified the gift tax credit as prepaid inheritance tax, an asset includable in the gross estate." Elsewhere on brief he asserts that "California administrative and judicial authority have determined the State gift tax payment to be a property interest of the decedent's estate, a determination that is primarily a matter of State law."

The relevance of State law to this proceeding may be more accurately stated. In the absence of preemptive Federal law, see *United States v. Chandler,* 410 U.S. 257 (1973), State law governs the creation of legal interests and rights in property. However, Federal law determines what interests or rights, so created, shall be taxed. In making the latter determination, State law nomenclature is irrelevant. *Morgan v. Commissioner,* 309 U.S. 78 (1940); *Estate of Aldrich v. Commissioner,* 425 F.2d 1395, 1398 (5th Cir. 1970); *Flitcroft v. Commissioner,* 328 F.2d 449, 456 (9th Cir. 1964); *Peyton's Estate v. Commissioner,* 323 F.2d 438, 442 (8th Cir. 1963); *Estate of LePoutre v. Commissioner,* 62 T.C. 84 (1974). Consequently, the State's use of the term "prepaid inheritance tax" to describe the increase in its inheritance tax base is not conclusive that the requisite interest existed.

It should also be apparent from the foregoing that the California Supreme Court's indication in *In re Estate of Schmalenbach* that State gift taxes paid prior to death "would

necessarily * * * be deemed an asset of the estate" for purposes of computing State inheritance taxes is not "a State judicial determination of the issue [here] before the Court." In fact, it is irrelevant what items may be subjected to the California inheritance tax. *Lang v. United States*, 356 F. Supp 546, 549 (S.D. Iowa 1973). And moreover, the court's explanation that failure to increase the inheritance tax base "would constitute failure to comply with the legislative intent that 'every transfer made in lieu of or to avoid the passing of property by will or the laws of succession' be subjected to the inheritance tax" implies, as we conclude, that the decedent did not possess a property interest as a result of paying his gift taxes.

Upon payment of his State gift taxes, the decedent discharged an obligation imposed upon him by State law at the time the gifts were made. Cal. Rev. & Tax. Code secs. 15901, 15904 (West 1970). See *In re Cummings' Estate*, 236 Cal. App.2d 659, 46 Cal. Rptr. 491 (2d Dist. Ct. App. 1965). He parted with all his property rights in the funds used to pay the taxes. The gift tax liability was not a contingent liability, vesting in either the decedent or his estate a right to the return of those funds, or any portion thereof, regardless of whether the gift transfers subsequently became subject to death taxes. See note 4 *supra*. Consequently, the decedent had no interest in the actual moneys used to pay his gift taxes that was capable of passing from him to his survivors at the time of his death.[5]

The State did, however, allow a credit against the inheritance taxes it imposed on the gift transfers for the gift taxes which the decedent had paid.[6] But the decedent never possessed any legal incidents of property through which the use or economic enjoyment of the credit could be controlled. It was not allowable in accordance with his wishes, but rather, as determined by

---

[5]Whatever the validity of respondent's assertion that "whether the state gift tax liability is termed 'contingent' or 'absolute' does not affect its value as a property interest of the decedent at his death," we are not here concerned with *value* but the very *existence* of such a property interest. The valuation of an existing interest at the time of death and the determination that an interest exists at the time of death are far different concerns. *Connecticut Bank & Trust Co. v. United States*, 465 F.2d 760, 763 (2d Cir. 1972).

[6]Cal. Rev. & Tax. Code sec. 14059 (West 1970), provides:

"Credit equal to gift tax paid

"The inheritance tax payable on an includible gift shall be reduced by a gift tax credit equal to the gift tax paid on the includible gift. However, the credit shall not exceed an amount which bears the same proportion to the total inheritance tax imposed by this part on transfers to the donee from the donor as the net reduced includible gift bears to the gross value of the property transferred."

State law. Cf. Rev. Rul. 75–145, 1975–1 C.B. 298 (the value of uncashed social security benefit checks is not includable in the value of the gross estate under section 2033 because the decedent, lacking the right to designate the beneficiary of the payments to be completed after his death, possesses no rights at the time of his death that he can transmit to a survivor). The right to the credit did not even arise until the decedent's death, a point at which he was no longer capable of owning any property. Accord, *Connecticut Bank & Trust Co. v. United States, supra;* Cf. Rev. Rul. 75–126, 1975–1 C.B. 296; Rev. Rul. 75–127, 1975–1 C.B. 297 (neither the value of a right of action for wrongful death, which arises by reason of death, nor of proceeds recovered therefrom is includable in the value of the gross estate under section 2033). The decedent had no more than an expectancy that if the gift transfers subsequently became subject to inheritance taxes a credit would be allowed for the State gift taxes he had paid. This expectancy was realized, but it does not rise to the dignity of an interest in property the value of which is includable in his gross estate under section 2033. The right to the credit, though based upon actions of the decedent during his lifetime, came unilaterally from the State of California.[7]

The decedent's property rights are not changed by looking to the post-death effect of his lifetime payment of the gift taxes. Nor are they changed simply because for purposes of increasing its inheritance tax base the State may treat certain gift taxes paid *as if* they were a prepayment of death taxes. Tax law does not change the law of property, *Ingalls v. Commissioner*, 336 F.2d 874, 876 (4th Cir. 1964), and it is the law of property with which we are here concerned. Because the decedent's lifetime payment of his State gift tax liability resulted in nothing that was capable of passing from him at the time of his death, respondent's reliance upon section 2033 to increase the value of his gross estate is misplaced.

It is respondent's failure to differentiate the post-death effect of the decedent's lifetime payment of his gift taxes from an interest in property which leads to his misplaced reliance upon

---

[7]Respondent's analogy of the right to the gift tax credit to tax refund claims which survive a decedent taxpayer, e.g., *Bank of California v. Commissioner*, 133 F.2d 428 (9th Cir. 1943); *Holland v. McGowan*, 162 F. Supp. 156 (W.D. N.Y. 1956), is inapposite, for in such cases it is the *decedent's claim for a refund* which is the property the value of which is includable in his gross estate. By its very nature, the right to the credit could not belong to the decedent.

*Estate of Pratt v. Commissioner,* a Memorandum Opinion of this Court dated February 17, 1943 (1 T.C.M. 627, 12 P-H Memo. T.C. 43,269 (1943)). In *Pratt* the decedent established a trust during her lifetime which contained a provision directing the trustees upon her death to set aside from the principal of the trust fund the sum of $50,000 to pay the whole or any part thereof to the executors of her will for the payment of State and Federal death taxes. In her will the decedent authorized and directed her executors to draw upon the $50,000 for the stated purpose. At the time of her death, either by directing in her will the distribution of her other property as she desired or by simply allowing her other property to pass by the laws of intestacy, the decedent controlled the use and economic enjoyment of the chose in action that she created. This Court held that the claim for the payment of taxes which the decedent created during her lifetime and gave to her estate was an asset the value of which was includable in her gross estate.

We recognize the similarity in effect of the availability of the trust funds in *Estate of Pratt* and the gift tax credit here, but that effect proceeds from widely distinguishable legal circumstances. The claim involved in *Estate of Pratt* was brought into existence at the time the decedent created the trust, and though her death was necessary to bring it to fruition, the decedent controlled its use and economic enjoyment at the time of her death by the distribution of her other property. The right to the gift tax credit involved in this case never came into existence until the decedent's death.

Finally, if respondent's halfhearted attempt on brief to distinguish the payment of Federal gift taxes from the payment of State gift taxes, in the circumstances, may be taken as a concession that the payment of Federal gift taxes for which a credit against Federal estate taxes is allowed results in nothing includable in the gross estate under section 2033, he has himself undermined the validity of his argument with respect to the State gift taxes.[8] This is not because of our "assumption that a state gift tax payment is entitled to the same Federal tax treatment given to a Federal gift tax payment," but because, insofar as section 2033 is concerned, the decedent stands in the

---

[8]The distinguishing feature pointed to by respondent is that secs. 2012 and 164, among others, provide for different treatment of State and Federal taxes.

same position with respect to the credit allowed for Federal gift taxes as he does with respect to the credit allowed for State gift taxes. Each credit is allowed against death taxes by the respective taxing authority as a result of the inter vivos payment by the decedent of unconditional gift tax obligations imposed upon him. Keeping in mind that we look to State law for the creation of property interests, and that California treats each gift tax payment as a prepayment of death taxes for its inheritance tax purposes, *In re Estate of Schmalenbach, supra,* we are unable to conceptualize how the decedent could have a property interest with respect to the payment of his State gift taxes and not with respect to the payment of his Federal gift taxes.

No useful purpose would be served by further lengthening this opinion to discuss the other contentions advanced by respondent. Suffice it to say that if there be an undesirable "loophole" in the law, the remedy lies with legislation. Congress well knows how to discourage deathbed transfers insofar as taxplanning is concerned, as it recently showed with the enactment of section 2035(c) as part of the Tax Reform Act of 1976, Pub. L. 94–455, 90 Stat. 1520, which removes the incentive for such transfers insofar as Federal gift taxes are involved.[9] Failure to find a property interest of the decedent at the time of his death is dispositive of this case.

*Decision will be entered for the petitioner.*

---

[9] SEC. 2035. ADJUSTMENTS FOR GIFTS MADE WITHIN 3 YEARS OF DECEDENT'S DEATH.

(c) INCLUSION OF GIFT TAX ON CERTAIN GIFTS MADE DURING 3 YEARS BEFORE DECEDENT'S DEATH.— The amount of the gross estate (determined without regard to this subsection) shall be increased by the amount of any tax paid under chapter 12 by the decedent or his estate on any gift made by the decedent or his spouse after December 31, 1976, and during the 3-year period ending on the date of the decedent's death.