STATE OF TEXAS V. H. C. WIESS, INDEPENDENT EXECUTOR OF THE ESTATE OF LOUISA ELIZABETH WIESS, DECEASED.

No. 8062. Decided May 19, 1943.
Rehearing overruled June 23, 1943.
(171 S. W., 2d Series, 848.)

*Gerald C. Mann,* Attorney General, *Billy Goldberg,* former assistant Attorney General, *Walter R. Koch* and *Cecil C. Rotch,* Assistants Attorney General, for petitioner.

The Court of Civil Appeals erred in holding that as the Federal tax under the Revenue Act of 1926 imposed by the United States Government on the Wiess estate was based on a gift by the decedent during her life time and as the State inheritance tax law, at the time of the decedent's death, did not permit the State to include the value of "a gift made during the giver's lifetime in contemplation of the giver's death" that the State could not collect a tax in an amount based upon 80% of the taxes "imposed on such estate by the United States Government under the Revenue Act of 1926," thereby denying the State recovery of an additional tax from the Wiess estate under Article 7144a Vernon's Ann. Civ. Stat. Swan v. Great Northern Ry. Co., 40 N. Dak., 258, 168 N. W. 657; In re Thalmann's Estate, 32 N. Y. Sup. (2d) 695; Frick v. Commonwealth, 268 U. S. 473.

*E. E. Townes* and *J. Q. Weatherly,* both of Houston, for respondent.

The State's additional inheritance Tax law imposed an additional tax only when and to the extent that the Federal law allowed an offsetting credit. Joyner v. City of Seattle, 144 Wash.

641, 258 Pac. 479; Blue v. City of Union, 159 Ore. 5, 75 Pac. (2d) 977; Matthews v. Houston Oil Co., 299 S. W. 450; 15 C. J. S. 711, 737-739.

MR. JUSTICE CRITZ delivered the opinion of the Court.

This is an inheritance tax suit. It was filed in the District Court of Travis County by the State of Texas against H. C. Wiess, Independent Executor of the Estate of Mrs. Louisa Elizabeth Wiess, deceased. Trial in the district court, without the intervention of a jury, resulted in a judgment for the executor. This judgment was affirmed by the Beaumont Court of Civil Appeals. 166 S. W. (2d) 216. The State brings error.

Mrs. Wiess died testate on July 7, 1936. Her will was duly probated in the Probate Court of Harris County, Texas, where she resided at the time of her death. Mrs. Wiess' will named her son, H. C. Wiess, independent executor of her estate, and he has duly qualified as such. The above-named executor, within the time provided by law, filed a State Inheritance Tax report with the County Judge of Harris County, Texas. Also, as authorized by law, the executor filed an instrument waiving the appointment of appraisers to appraise this estate for State inheritance tax purposes, and agreed that the Comptroller of this State and the County Judge of Harris County should make such appraisal.

Acting under the above waiver and agreement, the Comptroller and the County Judge fixed the value of this estate, as of date Mrs. Wiess' death, at $601,793.59. Proper orders were then entered fixing the amount of inheritance tax due by this estate to the State, under the provisions of Article 7117 et seq., Chapter 5, Title 122, V. A. C. S., at $13,774.68. This sum was promptly paid by the executor to the proper State authority.

The executor also filed with the United States Collector of Internal Revenue a "Federal Estate Tax" return. This return was made under the Federal Revenue Acts of 1926 and 1932. This return showed the value of the estate at the same amount as the value fixed by the authorities of this State, $601,793.59. The Federal estate tax computed on the sum just named was $88,177.71. This amount was promptly paid by the executor to the proper United States authority.

The United States Collector of Internal Revenue refused to accept the return as made by this executor, and demanded that

the total value of this estate for Federal estate tax purposes be increased from $601,793.59, as shown by the executor's return, to $2,953,632.71. On this demand increase of value the United States Revenue Collector demanded that this estate pay an additional Federal tax of $576,007.16.

The increase in value of this estate from $601,793.59, as shown by the executor's return, to $2,953,632.71, as proposed or demanded by the United States Revenue Collector, was based on two things viz.: (a) the value of the property owned by Mrs. Wiess at the time of her death was increased by $14,769.12; and (b) other properties were added. Such added properties were properties which the Federal authorities claimed had been given away by Mrs. Wiess "in contemplation of death." The Federal authorities claimed that these added properties were includible as a part of the estate of the deceased. These added properties were valued at $2,337,070.00 by the Federal authorities. From the above it is seen that the United States Revenue Collector proposed or demanded that the estate be valued for Federal estate tax purposes as follows:

Value of the property possessed by Mrs. Wiess at the time of her death, the amount of the executor's return, $601,793.59, plus an increased or added value of $14,769.12 _____$616,562.71

Value of property claimed to have been given away "in contemplation of death," _____ 2,337,070.00

Total value, _____$2,953,632.71

On the above added value the United States Revenue Collector demanded that this estate pay an additional tax of $576,007.16. This additional tax was demanded under the Federal Revenue Act of 1926 and the Federal Revenue Act of 1932.

This executor duly protested the above proposed or demanded increased and added properties and valuations, and a hearing thereon was had. As a final result of such hearing, and of negotiations between the executor and the Federal authorities, a compromise agreement was entered into. By the terms of this compromise this executor agreed to pay, in full settlement of the claim for United States estate taxes, the sum of $354,435.72. This sum was agreed to be net to the United States and subject to no deductions of any kind. In making this settlement there was no agreement as to what was paid on account of any raise in the value of the properties Mrs. Wiess died possessed

of, or what was paid on account of the properties given away by Mrs. Wiess during her lifetime "in contemplation of death." Simply stated, this executor made a lump sum settlement with the Federal authorities, such sum to be net to the Federal Government, subject to no deductions or credits for any State inheritance taxes that might be due. The compromise agreement did not show how much was paid under the Federal Revenue Act of 1926, or how much was paid under the Federal Revenue Act of 1932. It simply stated one sum in settlement of Federal estate taxes. This executor paid to the proper Federal authority the compromise sum above mentioned.

After the executor had consummated his settlement agreement with the Federal authorities above mentioned, and after he had paid the additional Federal estate taxes in the sum above shown, the State of Texas demanded of this executor that he pay additional State inheritance taxes in the sum of $23,625.74. The State's demand for additional "inheritance and transfer" taxes in the sum of $23,625.74 is based on the provisions of the several sections of Article 7144a, Vernon's Texas Civil Statutes (Section 2b, Chap. 192, Acts 43d Leg., 1933, p. 585 et seq.), construed in connection with certain sections of the Federal Revenue Act of 1926. We will mention and discuss this Federal act later in this opinion.

The sum here sued for, $23,625.74, was calculated as follows: Although the compromise settlement with the Federal authorities above described did not show how much Federal tax was paid under the Federal Revenue Act of 1926, or how much was paid under the Federal Revenue Act of 1932, the Comptroller knew, and it is undisputed, that the sum of $354,-435.72 was paid under both of such acts. Also, the Comptroller knew, and it is undisputed, that the estate had previously paid to the Federal Government, as Federal estate taxes, the sum of $88,177.71. The Comptroller therefore added the two last-named sums together, to ascertain the total of the Federal estate taxes paid by this estate under the two Federal Revenue Acts above mentioned. This total sum is $442,613.43. The Comptroller then computed the value of an estate that would produce that amount of Federal taxes under the two Federal Revenue Acts above mentioned. The Comptroller then took an estate of that value, and by proper calculations determined that this estate paid Federal estate taxes under the Federal Revenue Act of 1926 in the sum of $46,750.53. As our statute, Section 1 of Article 7144a, fixes the tax due the State as the difference between the tax due under any other Texas law (in this instance $13,774.68)

and eighty per cent. of the estate taxes imposed by the Federal Revenue Act of 1926, the Comptroller found eighty per cent. of the sum of $46,750.53. This is $37,400.42. The difference between the sum last mentioned and the $13,774.68 already paid by this estate as inheritance taxes under Article 7117 et seq. of our Civil Statutes amounts to $23,625.74. This last-named sum is the amount here sued for by the State as "inheritance and transfer taxes" due under Article 7144a of our statutes.

█ To our minds, since the settlement above described with the Federal authorities did not allocate any sum paid by this estate to the Federal Government as between the two Federal acts above mentioned, the method used by the Comptroller in this instance to ascertain the Federal estate taxes paid under the Federal Revenue Act of 1926 was, and is, to say the least, very fair to this estate. Section 5 of Article 7144a makes it the duty of the person charged with the responsibility of filing reports of property for inheritance tax purposes to file with certain named State authorities a report showing the value placed on the estate he represents, and the amount of estate taxes assessed against the same by the Federal Government, etc. These statutory provisions cannot be avoided by making a lump sum settlement such as this with the Federal Government; and when such a settlement is made, all material doubts as to the taxes due the State under Article 7144a should be resolved against the estate.

█ We now come to decide whether this estate owes the taxes demanded by the State in this instance. In order to decide that matter we must construe Section 1 of Article 7144a of our Statutes, in the light of the other sections thereof and in connection with certain sections of the Federal Revenue Act of 1926. In order to decide whether this estate owes any taxes under Article 7144a, we must first determine the meaning of the term "net estate" as used in such statute. Clearly our statute levies an "inheritance or transfer tax" upon the "net estate" which is "situated in this State" of every decedent dying after its effective date. Our statutes nowhere attempts to define the words or term "net estate." Ordinarily it would mean only property belonging to the deceased at the time of death. Since it is evident on the face of our statute that it is intended to take full advantage of the Federal Revenue Act of 1926, and is intended to tax all property in this State covered by such Federal Revenue Act, we must look to the Federal Revenue Act to ascertain the meaning of the term "net estate" as used in our act. The Federal Act of 1926 (Section 301(a)) imposes a Fed-

eral estate tax "upon the transfer of the net estate of every decedent dying after the enactment of this act." Since Article 7144a of our Statutes refers to and is expressly based on the Federal Revenue Act of 1926, and since the language of our act follows very closely the language of the Federal Revenue Act, it is evident that the Legislature had in mind the Federal Act, and deliberately followed its language. It follows that we ought to conclude that the term "net estate" as used in our act was intended to mean the same thing that it means in the Federal act. In the Federal act the term "net estate" is expressly defined. In this connection, we call attention to the fact that Section (300(b) of the Federal act provides: "The term 'net estate' means the net estate as determined under the provisions of Section 303." Section 303 of the Federal act provides that the "net estate" shall be determined by making certain deductions from the "gross state." The "gross estate" is defined in Section 302 of the Federal act. We quote the pertinent portions of that section:

"The value of the *gross estate of the decedent* shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

"(a) To the extent of the interest therein of the decedent at the time of his death; * * *

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer * * * *in contemplation of* * * * *death* * * *." (Emphasis ours.)

Certainly if the Legislature in framing our act had intended to give the words "net estate" a different meaning than as defined by the Federal Act of 1926, it would have been careful to write into our act its own definition. This it did not do. Instead, it expressly wrote into our statute the purpose and intention to take full advantage of the eighty per cent. allowed to the State by the Federal act, without any extra burden to the estate taxed. And this can only be done by giving the words "net estate" as used in our statute the same meaning as is given such words in the Federal statute.

In this connection we quote Section 8 of Article 7144a of our Statutes:

"Section 1 to 7, inclusive, of this Chapter shall always be construed so as not to increase the total amount of taxes payable

to the State and the Federal Government combined upon the estates of decedents, the only purpose of said additional tax being to take *full advantage* of the eighty (80%)· credit allowed to the Federal Revenue Act of 1926, to those who have paid *any estate, inheritance, legacy, or succession tax to any State or Territory or to the District of Columbia, in respect to any prop-. ·erty included in the decedent's gross estate.*" (Emphasis ours.)

Undoubtedly the part of the Federal Act of 1926 referred to in our statute just quoted in Section 301 (b) of the Federal act. That section reads as follows:

"The tax imposed by this section shall be credited with *the amount of any estate, inheritance, legacy, or succession taxes actually paid ot any State or Territory or the District of Columbia, in respect of any property included in the gross estate.*" (Emphasis ours.)

We wish to here call attention to the fact that our Texas statute just quoted has appropriated the very language of the Federal statute quoted below it. We also note that the words "gross estate" are not used elsewhere in our statutes, but are used in the Federal statute, Section 301 (b), supra. We also note that Section 302, supra, of the Federal statute defines "gross estate" as including transfers of property in contemplation of death. Clearly, the identity of language above pointed out demonstrates beyond a doubt that the Texas statute was so drawn that the term "gross estate" would mean and include the same property as is included in the Federal act. This construction of our statute is further strengthened by the fact that on the one point where our statute must differ as to the property covered thereby from the Federal statute, our statute is careful to confine its provisions to property "situated in this State."

■ Our final conclusion is that, since the declared purpose of our statute is to take full advantage of the benefits allowed to the State by the Federal act, the terms "net estate" and "gross estate" as used in our act must be given the same meaning they are given in the Federal act. If these terms are given a different meaning in our act from that given in the Federal act, the very purpose of our act will·be defeated. We therefore conclude that the tax levied by Section 1 of Article 7144a of our statute covers not only the property that a deceased person dies possessed of, but also covers all property given away in contemplation of death, within the meaning of the Federal Revenue Act of 1926.

■ As we interpret its opinion, the Court of Civil Appeals holds that, since our statute, Article 7144a, was passed only to take advantage of the provisions of the Federal Revenue Act of 1926, which allows an estate taxpayer credit for inheritance tax payments made to States up to eighty per cent. of the taxes due the Federal Government under such Federal Revenue Act, and since it is the intention of our act not to increase the tax burden on any taxpayer, but only to take advantage of the eighty per cent. provisions of the Federal act, the State cannot collect any additional inheritance taxes in this instance, because to allow it to do so would be to increase the tax burden on this estate, in violation of Article 7144a. This conclusion is based on the theory that this estate compromised with the Federal authorities, and under the terms of such compromise agreement the estate was allowed no credit for the inheritance taxes that might accrue under Article 7144a. It is true that our statute was passed to take advantage of the eighty per cent. credit provisions of the Federal Revenue Act of 1926. It is also true that our statute was, and is, intended to be applied so as not to increase the tax burden on any taxpayer. In spite of all this, we cannot approve a rule that will make it possible for this State to be deprived of its right to tax under Article 7144a because an estate sees fit to compromise with the Federal authorities. In this instance the compromise agreement with the Federal authorities in effect stipulated that the amount paid thereunder was net to the Federal Government, and subject to no deductions or credits for State inheritance taxes. Under such a record it will be conclusively presumed that any State inheritance taxes levied by Article 7144a of our statute, and allowed to be deducted under the Federal Revenue Act of 1926, was taken into consideration in making the settlement with the Federal Government. Giving effect to this presumption, this estate certainly can have no complaint as to the amount here sued for. We cannot indulge in a ruling that would permit the State to be deprived of its right to tax under the Federal Revenue Act of 1926 and Article 7144a of our statutes by compromises such as this.

■ It seems to be contended by counsel for this estate that the construction we have given Article 7144a of our statutes renders it unconstitutional. We think it is sufficient to say that the tax levied by such article costs a Texas estate nothing. The Federal Revenue Act of 1926 provides that the taxes thereby imposed shall be credited, to the extent of eighty per cent. of the Federal tax imposed, with the amount of any estate, inheritance, legacy, or succession taxes paid to any State or Territory, etc.

Article 7144a merely levies such eighty per cent., thereby taking full advantage of the Federal Revenue Act. The final result of the State and Federal acts, construed together, is that the taxpayer will pay the same amount of taxes whether they are all paid to the Federal Government, or as much as eighty per cent. of the amount of the Federal taxes paid to the State, and the balance paid to the Federal Government. We are unable to see how such a law can violate any part of our Constitution. The Federal law declares the policy. The State law merely takes advantage of the right granted by the Federal law. The estate would pay the same amount of taxes if the State law had never been passed. In re Knowles' Estate, 295 Pa. 571, 145 Atl. 797; Haygood v. Doughton, 195 N. C. 811, 143 S. E. 841.

It is not intended by anything said in this opinion to intimate that the executor in this instance has in any manner acted in bad faith, or that he made his compromise with the Federal Government for the purpose of avoiding State taxes. To the contrary, we think the executor had a bona fide controversy with the Federal Government. We simply hold that when he made such compromise, the law will presume that he did so charged with the duty to pay the State inheritance taxes under the rule above announced.

The judgments of the Court of Civil Appeals and district court are both reversed, and judgment is here rendered for the State for the amount here sued for.

Opinion delivered May 19, 1943.

Rehearing overruled June 23, 1943.