[Civ. No. 20745.   First Dist., Div. Two.   Feb. 15, 1963.]

Estate of CORNELIA WHEELER GOOD, Deceased. ALAN CRANSTON, as State Controller, Petitioner and Respondent, v. STANLEY WELLS GOOD, JR., et al., as Executors, etc., Objectors and Appellants.

O'Donnell & Waiss and Fredrick S. Waiss for Objectors and Appellants.

Charles J. Barry, Chief Inheritance Tax Attorney, Milton D. Harris and John D. O'Hara, Assistant Inheritance Tax Attorneys, for Petitioner and Respondent.

KAUFMAN, P. J.—The taxpayers, as executors of the will of Cornelia Wheeler Good, appeal from an order overruling objections and fixing an additional inheritance tax pursuant to section 13441 of the Revenue and Taxation Code.

Appellants contend that the lower court's interpretation of section 13441 of the Revenue and Taxation Code is erroneous and contrary to legislative intent and that the statute is unconstitutional.

The facts are not in dispute. Cornelia Wheeler Good died on March 30, 1958, leaving an estate appraised at a little over $2,000,000. In May 1957, she had made gifts totaling over $1,000,000 to her three children, who are also the beneficiaries under the will. Appellants, as executors, filed California and federal gift tax returns for the decedent and paid the respective gift taxes. Appellants considered that the 1957 gifts

were made in contemplation of death and thus reported these gifts as such in the California inheritance tax affidavit and federal estate tax return. Therefore, the property on which the 1957 gift taxes had been paid was also subject to California death taxes and included in the estate for federal estate tax purposes. Both the Revenue and Taxation Code (§ 14059) and the Internal Revenue Code of 1954 (§ 2012) provide that such gift taxes shall be credited against the respective death taxes.

The problem in the instant case arises because the federal credit for state death taxes under section 2011 of the Internal Revenue Code of 1954 is calculated without any credit for gift taxes. ▇▇▇ Section 2011 (based on similar provisions in sections 810 and 813 subdivision (b) of the Internal Revenue Code of 1939) also provides that any reduction of the credit for state death taxes, since it increases the amount of the federal estate tax, likewise increases the amount of the gift tax credit in cases where the credit is limited to a certain proportion of the estate tax. The purpose of the section, which has been a part of the federal estate tax law since its enactment, was to enable the states to divert into their own treasuries, without additional burden to taxpayers, money which would otherwise be exacted by federal authority. (See *Highfield* v. *Delaware Trust Co.* (1930) 34 Del. (4 W.W. Harr.) 306 [152 A. 124], and cases collected in 147 A.L.R. 467.)

▇▇▇ As the section 2011 Internal Revenue Code of 1954 credit, in order to be obtainable, must arise from a state enactment, most states enacted a ''pickup'' statute designed to absorb any federal credit of which the advance might otherwise be lost. Thus, section 13441 of the Revenue and Taxation Code provides: ''In the event that a Federal estate tax is payable to the United Stats [*sic*] in a case where the inheritance tax payable to this State is less than the maximum State tax credit *allowed* by the Federal estate tax law, a tax equal to the difference between the maximum credit and the inheritance tax payable is hereby imposed.'' (Italics added.)

In the instant case, the disputed sum of $17,527.09 claimed by the state is the amount by which the credit against the federal estate tax for state death taxes pursuant to section 2011 of the Internal Revenue Code of 1954 exceeds the California inheritance tax. Appellants argue that as the application of section 13441 of the Revenue and Taxation

Code to the facts of this case increases the aggregate federal and state death taxes by $17,527.09, they have a right to effect a tax saving in this amount by waiving the credit and paying the amount of the California additional tax to the federal treasury rather than to the State of California.

The controversy centers around the proper interpretation of the word "allowed" in section 13441 of the Revenue and Taxation Code. Appellants' first contention on appeal is that the term means only the credit *actually allowed*; that if they exercise their right to waive the credit granted by section 13441 of the Revenue and Taxation Code and pay the amount thereof to the federal treasury, no credit has been *actually allowed* and the state cannot collect the additional tax.[1]

The state argues that the term means "allowable"; that in accordance with paragraph (c) of section 2011 of the Internal Revenue Code of 1954 and section 13441 of the Revenue and Taxation Code, it has assessed a tax equal to 80 per cent of the federal credit as computed in the appellants' federal estate tax return; that *actual allowance* in appellants' federal estate tax determination is not a condition to the state's right to assess the tax; that although the provisions were enacted for the benefit of the taxpayer, the fact that appellants do not benefit therefrom because of the gifts in contemplation of death is not significant.

As we see the case, to accept the appellants' argument would require us to hold that the state tax was dependent on the actual allowance of the credit by the federal government, and we are unwilling so to decide for the simple reason that such is not the true meaning of the language of the statute. The state's view is amply supported by logic and the weight of authority. It is well established that the state's right to the additional tax does not depend on the actual existence of the section 2011 credit. The leading case of *In re Thalmann's Estate,* 177 Misc. 1055 [32 N.Y.S.2d 695], held under a similar "pickup" statute that New York State could impose the additional tax even though the taxpayer had failed to claim the credit. *Wells* v. *Gay* (Fla. 1952) 58 So.2d 690, in which the taxpayer paid the state taxes too late to claim

[1] Appellants' contention that such a waiver will be reflected as an additional deduction for the determination of the California inheritance tax is based upon section 13989 of the Revenue and Taxation Code, which was repealed on June 24, 1959 (Stats. 1959, ch. 1128, § 5) but is effective as to this estate.

the federal credit is to the same effect.[2] *State* v. *Wiess* (1943) 141 Tex. 303 [171 S.W.2d 848, 147 A.L.R. 460], is also relevant as there, as in this case, decedent's estate for estate tax purposes included a number of substantial gifts in contemplation of death. The relevant Texas inheritance tax statute, like section 13441 of our Revenue and Taxation Code, fixed the tax due to the state as the difference between tax due under any other state law and 80 per cent of the federal estate tax. The taxpayer compromised with the federal government and stipulated that the amount paid to the federal government was subject to no deductions for state inheritance taxes. The court upheld the state's right to the additional tax, saying that: "As we interpret its opinion, the Court of Civil Appeals holds that, since our statute, Article 7144a, was passed only to take advantage of the provisions of the Federal Revenue Act of 1926, which allows an estate taxpayer credit for inheritance tax payments made to States up to eighty per cent of the taxes due the Federal Government under such Federal Revenue Act, and since it is the intention of our act not to increase the tax burden on any taxpayer, but only to take advantage of the eighty per cent. provisions of the Federal act, the State cannot collect any additional inheritance taxes in this instance, because to allow it to do so would be to increase the tax burden on this estate, in violation of Article 7144a. This conclusion is based on the theory that this estate compromised with the Federal authorities, and under the terms of such compromise agreement the estate was allowed no credit for the inheritance taxes that might accrue under Article 7144a. It is true that our statute was passed to take advantage of the eighty per cent. credit provisions of the Federal Revenue Act of 1926. It is also true that our statute was, and is, intended to be applied so as not to increase the tax burden on any taxpayer. *In spite of all this, we cannot approve a rule that will make it possible for this State to be deprived of its right to tax under Article 7144a because an estate sees fit to compromise with the Federal authorities.*" (Italics added.) (P. 852 of 171 S.W.2d.)

Our view is further supported by the fact that under the law in effect prior to 1942 (§ 813 subds. (a) (1) (2) and (b) of the Internal Revenue Code of 1939) appellants would have

---

[2]The federal statute provides that no credit for state taxes can be allowed unless the payment was made within four years after filing the federal estate tax return.

had no cause for complaint. Under the provisions of the Internal Revenue Code of 1939, the gift tax credit was allowed prior to the state death tax credit. The 1942 legislation (Act of Oct. 21, 1942, § 410) reversed the order so that the state tax credit is allowed prior to the credit for gift taxes. In the instant case, both sides agree there would be no problem if the decedent had not died within three years after making the 1957 gifts. We cannot hold that section 13441 of the Revenue and Taxation Code must be so interpreted as to deny the state the additional tax, because the application of the statute to the particular facts increases the burden on the taxpayer.

Appellants next contend that section 13441 violates the equal protection clause of the Fourteenth Amendment to the Constitution of the United States and the related provisions of the state Constitution (Art. I, §§ 11, 21; Art. IV, § 25) because: (1) the statute is discriminatory in that it increases their tax burden and it does not tax all estates in the same amount or at the same rate; and (2) the inequalities in the tax are not based on a reasonable classification or any classification at all. We need not discuss these contentions in great detail as the identical arguments have been made and refuted in the authorities cited above. (See *Hagood* v. *Doughton* (1928) 195 N.C. 811 [143 S.E. 841, 846], the court holding that the North Carolina pickup statute did not deny the plaintiffs due process of law or the equal protection of the laws; *State* v. *Wiess*, 141 Tex. 303 [171 S.W.2d 848, 147 A.L.R. 460]; *In re Thalmann's Estate*, 177 Misc. 1055 [32 N.Y.S.2d 695].) In *Wells* v. *Gay* (Fla. 1952) 58 So.2d 690, the court held that the pickup statute did not violate a constitutional provision stating that the additional taxes may not exceed in the aggregate the amounts which may by any law of the United States be allowed to be credited against or deducted from any similar tax upon inheritances, or taxes on estates levied by the United States on the same subject.[3]

Furthermore, there is no constitutional guarantee of equality of taxation. The power of the state to discriminate in fixing the amount and incidence of taxation is undoubted (*Stebbins* v. *Riley*, 268 U.S. 137, 141 [45 S.Ct. 424, 69 L.Ed.

[3]Appellants in their briefs make much of the different details of language, etc. in the pickup statutes of other jurisdictions. While we are aware of these differences, the significant point is that despite these differences, the majority of the courts have reached a conclusion consistent with our own. (The minority view is stated by *In re Robinson's Estate* (Ohio 1946) 72 N.E.2d 109.)

884, 44 A.L.R. 1454]), and there is no constitutional require-ment that tax statutes operate uniformly with respect to per-sons or things which are in fact different. (*Estate of Guth-man*, 125 Cal.App.2d 408 [270 P.2d 875].) It is true that section 13441 of the Revenue and Taxation Code does not apply to estates of all decedents who are residents of Cali-fornia or to all decedents who are residents of the state whose estate taxes · exceed the federal estate tax minimum. The section applies only to those estates where the maximum estate tax credit allowed by the federal estate tax law is greater than the inheritance tax calculated under the Cali-fornia act. Thus, while there is discrimination, a classifica-tion is determined, although reference is required to subsec-tions (b) and (c) of section 2011 of the Internal Revenue Code of 1954.

As to appellants' contention relating to inequality, the inequality of operation is due to the percentage of tax laid upon the several amounts taxable under the federal statute and is equally forceful as an objection to its constitutionality. Moreover, it has been said that all systems of tax legislation produce unequal and unjust results in individual instances, and if inequality in result must defeat the general law, then taxation becomes impossible. (1 Cooley, Taxation (4th ed.) § 223.)

Appellants also attempt to argue that the additional tax imposed by section 13441 of the Revenue and Taxation Code is an unconstitutional double tax as it is actually an estate tax (measured on the value of the net estate)[4] rather than an inheritance tax, taxing the transfer to each transferee. There can be no doubt, we take it, of the state's right to levy an estate tax, although a similar tax is imposed on the value of the net estate under the federal law. The two do not constitute objectionable or prohibited double taxa-tion. To constitute such taxation, the two taxes must be im-posed on the same property, by the same state or govern-ment, during the same taxing period, for the same purpose. Indirect duplicate taxation is not objectionable. (1 Cooley, Taxation (4th ed.) §§ 223 et seq; cf. *Hagood* v. *Doughton, supra.*)

---

[4]The federal estate tax is an excise tax on the surrender of old inci-dents of property by the decedent and the acquisition of new ones by the survivor, measured by the value of the property to which these inci-dents attach, while the state inheritance tax is based on the value of what the beneficiaries receive. (See *Estate of Buckhantz*, 120 Cal.App.2d 92 [260 P.2d 794].)

As stated in *Maxwell* v. *Bugbee*, 250 U.S. 525 [40 S.Ct. 2, 63 L.Ed. 1124], "inequalities that result not from hostile discrimination, but occasionally and incidentally in the application of a system that is not arbitrary in its classification, are not sufficient to defeat the law." (P. 543.)

Order overruling objections and fixing inheritance tax is hereby affirmed.

Shoemaker, J., and Agee, J., concurred.

A petition for a rehearing was denied March 4, 1963, and appellants' petition for a hearing by the Supreme Court was denied April 9, 1963.