[Civ. No. 32220. Second Dist., Div. One. July 10, 1968.]

Estate of LAURA LEE ELSTON CALLAWAY, Deceased. HOUSTON I. FLOURNOY, as State Controller, etc., Petitioner and Appellant, v. HULEN C. CALLAWAY, as Executor, etc., Objector and Respondent.

Joseph D. Lear, Walter H. Miller and Margaret Groscup for Petitioner and Appellant.

Hulen C. Callaway, in pro. per., Getz, Aikens & Manning, DeWitt M. Manning and Kenneth J. Murphy, Jr., for Objector and Respondent.

FOURT, J.—Houston I. Flournoy, Controller of the State of California, appeals from an order fixing inheritance tax adverse to the determination of tax set by the state inheritance tax appraiser.

It is the controller's contention that Revenue and Taxation Code section 13441 applies to the estate in question to ''pick-up'' for the benefit of the state the difference between the tax actually paid by the estate and the maximum credit for state death taxes allowable as a credit against federal estate tax.

Laura Otis Elston, mother of the decedent in the present case, died a resident of California on August 18, 1959. The major part of her estate, namely $2,950,955.79, she bequeathed to her daughter, Laura Lee Elston Callaway. An inheritance tax of $282,245.58 was imposed and paid to the state on the transfer of these assets to the daughter who was a Class A

transferee. (Rev. & Tax. Code, § 13307.) Because the state death tax at least equaled the federal credit for state death taxes, no additional or "pickup" tax was assessed to the mother's estate under Revenue and Taxation Code section 13441.

On January 11, 1962, the daughter, Laura Lee Elston Callaway, died leaving a probate estate with a clear market value for inheritance tax purposes of $4,182,007.55. The decedent's estate consisted entirely of separate property. She bequeathed to Class C and Class D transferees the sum of $126,000 on which the inheritance tax amount was correctly computed to be $11,255. The balance of her estate, or $4,056,007.55, she bequeathed to her surviving husband, Hulen C. Callaway, who is also a Class A transferee. (Rev. & Tax. Code, § 13307.)

 The state inheritance tax on the transfer to Hulen C. Callaway would, as stipulated by the parties, be $202,300.38 except for the application of Revenue and Taxation Code section 14071.[1] That section provides a state credit for a specified proportion of the tax otherwise due where successive transfers of property to Class A transferees take place within a period of five years from the first death. This prior transfer credit in the present estate would exceed, but is limited by, the amount of inheritance tax in the sum of $202,300.38 on the present transfer to the surviving husband.

The maximum credit under federal estate tax law for state death taxes due in this estate, also stipulated, is $107,472.03.

---

[1]Revenue and Taxation Code section 14071.

"There shall be allowed to each Class A transferee an inheritance tax credit where a tax has been paid on a prior transfer from a prior decedent to a present decedent under the following conditions and limitations:

"(a) (1) The present decedent must have been a Class A transferee of the prior decedent.

"(2) The present decedent must have died within five years from the date of death of the prior decedent;

"(3) That no tax was levied against either estate under Section 13441 or 13442.

"(b) The amount of the tax credit allowed a Class A transferee is a fraction of the inheritance tax charged to the present decedent in the estate of the prior decedent.

"The numerator of this fraction is the clear market value of all transfers subject to tax under this part which the Class A transferee receives from the present decedent.

"The denominator of this fraction is the clear market value of all transfers subject to tax under this part made by the present decedent.

"(c) For the purposes of this section 'property subject to tax under this part' includes the value of property exempted under Articles 1, 3, 5, and 6 of Chapter 5 of this part, and Sections 13694, 13695, 13696 and 13697 of this code."

The executor, objector to the inheritance tax appraiser's tax determination, claimed this full credit against the federal estate tax payable by this estate.

The state inheritance tax appraiser filed a report of tax wherein the inheritance tax due from the various Class C and Class D transferees was set forth, and an additional tax was reported as due in the amount of $96,217.03. This amount represents the difference between the $107,472.03 federal credit allowable for state death taxes and the $11,255 state death taxes actually paid to the state. This tax computation was based upon the application of Revenue and Taxation Code section 13441, commonly known as the additional or pickup tax.

The objections filed by the executor of the estate of Laura Lee Elston Callaway to the Report of Inheritance Tax Appraiser were sustained by the trial court which thereupon entered judgment fixing the inheritance tax due at $11,255, the amount attributable to the Class C and Class D transfers alone. The controller appeals from the court's disallowance of the additional tax, and we have concluded that appellant's position should be sustained.

A credit is allowable against federal estate taxes for any state death taxes *actually paid.* (I.R.C., § 2011.)[2] The federal credit for state death taxes is based upon the gross estate before the credit for previously taxed property is taken (I.R.C., § 2013) and is calculated without any credit for gift taxes previously paid on property includable in the taxable gross estate (I.R.C., §§ 2011 and 2012; *Estate of Good,* 213 Cal.App.2d 45 [28 Cal.Rptr. 378]) which insures that the state shall receive the maximum benefit. "The purpose of the section, [I.R.C. 2011], which has been a part of the federal estate tax law since its enactment, was to enable the states to divert into their own treasuries, without additional burden to taxpayers, money which would otherwise be exacted by federal authority [Citations.]

"As the section 2011 Internal Revenue Code of 1954 credit, in order to be obtainable, must arise from a state enactment, most states enacted a 'pickup' statute designed to absorb any federal credit of which the advance might otherwise be lost.

---

[2]I.R.C. section 2011(a) reads as follows: "The tax imposed by section 2001 (the estate tax) shall be credited with the amount of any estate, inheritance, legacy, or succession taxes *actually paid* to any State or Territory or the District of Columbia, in respect of any property included in the gross estate (not including any such taxes paid with respect to the estate of a person other than the decedent)." (Italics added.)

Thus, section 13441 of the Revenue and Taxation Code provides: 'In the event that a Federal estate tax is payable to the United Stats [*sic*] in a case where the inheritance tax payable to this State is less than the maximum State tax credit *allowed* by the Federal estate tax law, a tax equal to the difference between the maximum credit and the inheritance tax payable is hereby imposed.' (Italics added.)'' (*Estate of Good, supra*, 213 Cal.App.2d 45, 47.)

Respondent contends that section 14071 relieves this estate from all liability or obligation to pay either the ordinary state inheritance tax or the section 13441 pickup tax on those assets distributed to the Class A transferee. However, the application of a statutory construction consistent with the acknowledged legislative intent to preserve for the state the benefit under the correlated state and federal statutes refutes this contention and reconciles the apparent conflict in the statutory language upon which the executor's position is founded.

■ Obviously, the Legislature did not intend, by extending the prior transfer credit (Rev. & Tax. Code, § 14071), to defeat its purpose to receive the maximum pickup tax (Rev. & Tax. Code, § 13441.) ■ It is conceded that respondent satisfies the requirement of section 14071: his deceased wife was a Class A transferee of the prior decedent, her mother; his wife died within five years of her mother's death; and no tax was levied against either estate under section 13441 or 13442. Respondent's credit thereunder would, but for the subsequent application of section 13441, completely obliterate his tax liability as a Class A transferee. The $11,255 liability of the Class C and Class D transferees, however, constitutes the ''inheritance tax payable'' to this state under section 13441, and this amount is substantially less than the maximum federal credit for state death taxes. This circumstance justifies the imposition of the pickup tax under section 13441.

The troublesome provision of section 14071 is subparagraph (a)(3) which limits the credit allowable thereunder to a case in which ''no tax was levied against either estate under section 13441 or 13442.'' ■ In view of the object and purpose of the law (45 Cal.Jur.2d, 636-637) we conclude that the condition imposed by section 14071 was intended to limit the taxpayer's right to obtain the credit to the described situations, but was not intended to limit the state's right to collect the pickup tax if it is ultimately made to appear that but for the application of section 14071 the state would be so

entitled. The net result of this interpretation is to allow the credit while at the same time insuring that the credit allowance shall not bar the levy of the pickup tax.

This construction gains credence from the tax computation procedure. Practical considerations dictate that the initial calculation of the state inheritance tax, which is applied at rates based upon the relationship between decedent and transferee and takes into account all deductions, exemptions and credits, shall precede the computation either of the federal estate tax or of the state pickup tax. Thereafter, federal estate taxes must be calculated to determine the maximum amount of credit for state death taxes which is authorized by the federal government. In the light of this computation, the state pickup tax is imposed as a flat sum without regard to any of the inheritance tax incidents of the estate. ■ The method of assessing the pickup tax necessarily varies somewhat from the regular state inheritance tax assessment procedure (see Rev. & Tax. Code, §§ 14126, 14103, and 14161) and the court's jurisdiction to fix the pickup tax continues after a final order fixing inheritance tax and after the closing of the probate estate. (Rev. & Tax. Code, § 13443, subd. (a).)[3] The state need not, therefore, claim the pickup tax until after the final determination of the federal tax, and the federal credit for state death taxes, which can be claimed only upon payment to the state, is satisfied only by taxes "actually paid." (I.R.C., § 2011(a), fn. 2, *supra*.)

■ Respondent, however, claims that he should obtain as a credit against federal estate taxes the amount of inheritance tax liability computed *before* section 14071 is applied to credit him with taxes paid on the prior transfer. This interpretation of the tax statutes does violence to the legislative purpose without substantially benefiting the taxpayer since the tax payment on the prior transfer does not qualify as a state death tax "actually paid" (I.R.C., § 2011, fn. 2, *supra*). In order to obtain the state death tax credit, the taxpayer must

---

[3]Revenue and Taxation Code section 13443. State death tax credit; modification of amount of additional tax.

"(a) If the amount of the maximum state death tax credit allowable pursuant to the federal estate tax law is later found to exceed the total amount of tax fixed by an order fixing inheritance tax theretofore made, the court which made said order shall, upon petition of the Controller after notice to the persons chargeable with any increased tax, modify it to fix the true amount of additional tax due under this article. The Controller's petition for modification may be filed at any time within six months after he has received knowledge that the federal estate tax has been finally determined."

demonstrate that he has indeed paid to the state the amount claimed on his federal estate tax return or he forfeits the federal credit. Respondent attempted to apply the entire $213,555.38 toward the state death tax to obtain the maximum allowable federal credit, limited in this case to $107,472.03, against the estate tax, but has "actually paid" only $11,255 to the state.

Respondent in any event receives from the state the intended benefit of the application of section 14071 since without the prior transfer credit an inheritance tax of $203,300.38 would have been due on the value of the assets transferred to him.

The judgment is reversed with directions to enter an order fixing inheritance tax in the amount of $96,217.03.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied August 6, 1968, and respondent's petition for a hearing by the Supreme Court was denied September 5, 1968.