[Civ. No. 32671.   Second Dist., Div. One.   Dec. 13, 1968.]

Estate of LILLIAN KIRSHBAUM, Deceased. HOUSTON I. FLOURNOY, as State Controller, Petitioner and Appellant, v. JOSEPH B. KIRSHBAUM et al., Objectors and Respondents.

Joseph D. Lear, Walter H. Miller and Margaret Groscup for Petitioner and Appellant.

Shearer & Fields, Jacob Shearer and Bernard Shearer for Objectors and Respondents.

Heller, Ehrman, White & McAuliffe, Julian N. Stearn, Jerry H. Robinson and Stephen V. Bomse as Amici Curiae on behalf of Objectors and Respondents.

LILLIE, J.—This is an appeal by the State Controller from an order sustaining written objections by the decedent's executors to the inheritance tax appraiser's report and fixing the inheritance tax payable in said matter. As will hereinafter appear, in determining the tax due it became necessary to apply the provisions of section 13441, Revenue and Taxation Code, imposing a so-called "pick-up" tax. The issue here involves the correct measure of such additional tax when a decedent has made an *inter vivos* transfer subject to the California gift tax credit (§ 14059, Rev. & Tax. Code) and which is also subject to the California inheritance tax. (§ 13401, Rev. & Tax. Code.)

Upon decedent's death in December of 1962, the fair market value of her total taxable estate was $376,895.87. Most of this estate consisted of an *inter vivos* trust, created several months earlier (March 1962), having a fair market value as of the date of decedent's death of $301,650.79. At the time the trust was created, a California gift tax in the amount of $7,284.82 was assessed and paid; a gift tax credit in the above amount was thereupon claimed against the inheritance tax payable with respect to the entire taxable estate, amounting to $9,060.26, leaving a net inheritance tax (at that point) of $1,775.44. Additionally, the total inheritance tax above payable ($9,060.26) being less than the maximum credit ($11,007.67) allowed by the federal estate tax law (Internal Revenue Code, § 2011), the California taxing agency invoked the "pick-up" provisions of section 13441, *supra*.[1]

As mentioned earlier, the present controversy involves the determination of the correct amount of such additional or "pick-up" tax in view of the provisions of section 14059 (allowing a gift tax credit) which necessarily must be taken into consideration. The Controller contended below that the measure of the additional tax should be the difference between

---

[1] "The purpose of the section [I.R.C. § 2011], which has been a part of the federal estate tax law since its enactment, was to enable the states to divert into their own treasuries, without additional burden to taxpayers, moneys which would otherwise be exacted by federal authority. [Citations.]

"As the section 2011 Internal Revenue Code of 1954 credit, in order to be obtainable, must arise from a state enactment, most states enacted a 'pickup' statute designed to absorb any federal credit of which the advance might otherwise be lost. Thus, section 13441 of the Revenue and Taxation Code provides: 'In the event that a Federal estate tax is payable to the United Stats [*sic*] in a case where the inheritance tax payable to this State is less than the maximum State tax credit *allowed* by the Federal estate tax law, a tax equal to the difference between the maximum credit and the inheritance tax payable is hereby imposed.' (Italics added.)" (*Estate of Good*, 213 Cal.App.2d 45, 47 [28 Cal.Rptr. 378].)

the final amount of inheritance tax calculated on all transfers, after credit for gift tax paid, and $11,007.67. Respondent executors, on the other hand, took the position (with which the trial court agreed) that such additional tax represented the difference between the inheritance tax imposed (§ 13401) before deduction of the gift tax credit (§ 14059) and the California death tax credit allowable under section 2011, Internal Revenue Code. An understanding of these contrasting contentions becomes more readily understandable when read with certain tables of computations or calculations appearing in the brief of amicus curiae:

### *Respondent-executors*

1. $7,284.82—Gift tax paid on includible *inter vivos* transfer.
2. +$1,775.44—Inheritance tax [$9,060.26] as reduced by section 14059 gift tax credit [$7,284.82].
3. +$1,947.41—(Additional tax under section 13441, such tax being determined by subtracting the state inheritance tax *before* reduction by the section 14059 credit [$9,060.26] from the maximum credit allowed by section 2011, Internal Revenue Code [$11,007.67].

$11,007.97—Total tax payable.

### *Appellant-Controller*

1. $7,284.82—(Gift tax paid on *inter vivos* trust).
2. +$1,775.44—(Inheritance tax [$9,060.26] as reduced by section 14059 tax credit [$7,284.82]).
3. +$9,232.23—(Additional tax under sction 13441, such tax being determined by subtracting the state inheritance tax *after* reduction by the section 14059 credit [$1,775.44] from the maximum credit permitted by section 2011, Internal Revenue Code [$11,007.67].

$18,292.49—Total tax payable.

For the following reasons we believe that respondents' contentions are sustainable and that the order here challenged must be affirmed. The trial court drew the conclusion of law, among other such determinations, that ''The gift tax credit hereinabove referred to is deemed a partial payment of the inheritance tax imposed, leaving an inheritance tax to be paid after application of such credit in the amount of $1,775.44,'' The correctness of this determination is disputed

by the Controller upon the premise that the gift tax law is no part of the inheritance tax law and that any attempted correlation between the two systems is unwarranted. Cited is *Douglas* v. *State of California*, 48 Cal.App.2d 835, 837-838 [120 P.2d 927], where the court pointed out that the gift tax law was enacted to raise revenue in cases where it was losing income tax, as well as death tax, by virtue of *inter vivos* transfers. It appears, however, that the cited case does not completely rule out the possibility of some correlation between the various taxing systems; too, the gift statute (§ 14059) expressly provides, in part, that "the credit shall not exceed an amount which bears the same proportion to the total *inheritance tax* imposed by this part on transfers to the donee from the donor as the net reduced includible gift bears to the gross value of the property transferred." (Italics added.) It seems rather clear, therefore, that if the transfer originally subject to a gift tax is ultimately subject to an inheritance tax, the credit provision contained in the above statute makes the payment of such gift tax tantamount to a down payment on the inheritance tax. Federal courts have thus viewed a similar gift tax credit provided by section 2012, Internal Revenue Code; thus, in *Ingalls* v. *Commissioner of Int. Rev.* (4th Cir. 1964) 336 F.2d 874, 876, the court stated that "Double taxation, if any, of the transfer is avoided by allowance of a credit for the earlier paid gift tax. The taxes are not always mutually exclusive. The gift tax amounts to a down payment on the estate tax." In so holding, the court took cognizance of the declaration in *Smith* v. *Shaughnessy*, 318 U.S. 176, 179 [87 L.Ed. 690, 692, 63 S.Ct. 545], that "the [federal] gift tax amounts in some instances to a security, a form of down-payment on the estate tax which secures the eventual payment of the latter; . . ."

The trial court also drew the conclusion of law, likewise challenged, to the effect that "The inheritance tax payable, which is the amount to be deducted from the maximum state credit allowed by the federal estate tax law under § 13441 is equal to the amount of the inheritance tax imposed without deduction for any gift tax credit granted by the state." While section 13441 provides that the additional tax imposed is "the difference between the maximum [federal] credit and the inheritance tax payable," the words "inheritance tax payable" apparently have never been expressly defined; their use elsewhere, however, serves to throw some light on their proper interpretation here. Thus, section 14059 *mandatorily* provides that "the inheritance tax payable on an includible

gift shall be reduced by a gift tax credit equal to the gift tax paid on the includible gift.'' Compliance with the mandate of the above provisions requires that the "inheritance tax payable" must first be computed, which sum is then reduced by the gift tax allowed under section 14059. Manifestly a *reduction* by the gift tax credit of the inheritance tax payable would be impossible without a prior determination of such "inheritance tax payable." It is contended by respondents, and properly so in our opinion, that the words "inheritance tax payable" appearing in section 13441 have the same meaning as they have in section 14059; accordingly, the additional tax imposed by section 13441 is the difference between the federal credit and the inheritance tax payable without any reduction for the state gift tax credit under section 14059. We reach the above conclusion in view of the established rule of construction that when a word or phrase has been given a particular meaning in one part or portion of the law, it shall be given the same meaning in other parts or portions of the law. (*Stillwell* v. *State Bar,* 29 Cal.2d 119, 123 [173 P.2d 313].)

There is another well-established principle of statutory construction which compels the above conclusion, namely, " 'Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different intention existed.' [Citation.]'' (*Richfield Oil Corp.* v. *Crawford,* 39 Cal.2d 729, 735 [249 P.2d 600].)

Thus, section 14161 provides a discount against the inheritance tax for prompt payment, and section 14071 grants a previously taxed property credit for certain transfers from prior decedents; both statutes, however, expressly provide that the discount or credit (as the case may be) will not be granted where an additional tax is due under section 13441. Significantly enough no mention is made by the Controller of the *Richfield Oil* case; and while he does refer to section 14161, such reference is merely accompanied by a query: "Is the five per cent discount to apply on the inheritance tax before reduction by the gift tax?''

The Controller's attempt to distinguish the only state court decision apparently dealing with the instant problem is not persuasive. In *Commonwealth, Dept. of Taxation* v. *Lewis,* 208 Va. 221 [156 S.E.2d 589], it appears that Virginia, like California, had a gift tax, an inheritance tax, a pick-up tax, and a provision for gift tax credit (although not identical in form

with California's). As here, certain transfers were made, prior to death, and gift taxes paid thereon. Citing *Smith* v. *Shaughnessy, supra,* (318 U.S. 176), the Virginia Supreme Court held: "When the assets on which the $24,850 gift tax was paid were included in Mrs. Jennings's estate for death tax purposes, the $24,850 already paid constituted in effect an advance payment on account of the Virginia death tax." (P. 592.) The Virginia court also noted that the Internal Revenue Service had issued a technical advice memorandum relating to the estate's claim that the total Virginia inheritance tax liability of $183,329.12 should be satisfied by a cash payment of $158,479.12 and a gift tax credit of $24,850.00. The Internal Revenue Service ruling concluded: " '[I]f the State of Virginia certifies payment of inheritance taxes in the amount of $183,329.12 made on behalf of the above-named estate, and the latter claims credit therefor within four years after the filing of the estate tax return, we hold that the maximum amount of the credit authorized by section 2011 will be allowed.' " (P. 593.) The above discussion would seem to satisfy the Controller's qualms that an affirmance of the instant order will fail to divert to the state the entire federal credit but, on the contrary, will require respondents to pay an additional amount to the federal government.

Finally, we take notice of the statement in *Estate of Good,* footnote 1, *supra* (213 Cal.App.2d 45, 47) that "The purpose of the section [I.R.C. § 2011] . . . was to enable the states to divert into their own treasuries, *without additional burden to taxpayers,* money which would otherwise be exacted by federal authority." (Italics added.) That such additional burden would result from the Controller's present position cannot be gainsaid. ■■■ Too, there is an established rule of construction when courts are called upon to interpret statutes levying taxes: " 'In case of doubt, construction is to favor the taxpayer rather than the government.' " (*California Motor etc. Co.* v. *State Board of Equalization,* 31 Cal.2d 217, 223-224 [187 P.2d 745].)

The order is affirmed.

Wood, P. J., and Fourt, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 5, 1969.