[No. A022195. First Dist., Div. One. June 26, 1985.]

HERTA M. GRUSCHKA, Plaintiff and Appellant, v.
UNEMPLOYMENT INSURANCE APPEALS BOARD,
Defendant and Respondent.

COUNSEL

Tesfaye W. Tsadik for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Charlton G. Holland and Asher Rubin, Deputy Attorneys General, for Defendant and Respondent.

OPINION

**RACANELLI, P. J.**—Appellant, a retail clerk by occupation, sustained an injury while on vacation in September 1981. After returning to work on

October 18, 1981, she first learned of the possibility of obtaining converted sick leave benefits under her union coverage. Appellant, believing she could not file a claim for state disability benefits until she first exhausted benefits available through her union,[1] delayed completion of the claim until after she received notice of her union's denial of benefits on December 11 or December 12, 1981. Within a few days thereafter she submitted the required claim form to her attending physician for inclusion of necessary medical data. The fully completed form was not received by the Department of Employment Development (Department) until January 7, 1982. The Department denied appellant's claim as untimely within the meaning of section 2706.1 of the Unemployment Insurance Code (to which all further statutory references apply unless otherwise indicated) requiring such claims to be filed "not later than the 20th consecutive day following the first compensable day of unemployment and disability . . . which time shall be extended by the department upon a showing of good cause."[2]

Following a hearing before an administrative law judge, the Department's decision was affirmed based on a determination that appellant was not entitled to an extension of time within which to file by reason of her failure to demonstrate good cause. The standard of good cause applied was explicitly defined as " 'compelling reasons, or circumstances which would prevent a reasonable person under the circumstances presented from filing a claim.' "

On appeal to respondent California Unemployment Insurance Appeals Board (Board), appellant renewed her argument that her good faith but mistaken belief concerning preliminary union notification constituted good cause within the meaning of section 2706.1. Respondent Board rejected appellant's argument and adopted the statement of facts and reasons given in upholding the administrative decision.

Thereafter, appellant's petition for writ of mandate challenging respondent's decision was heard and denied by minute order. This appeal ensued from the judgment entered on the order denying relief.

---

[1] Appellant had in fact followed a similar practice in filing and receiving a small disability claim benefit earlier that year. While her testimony given at the administrative hearing (provided through a telephone conference line hookup due to applicant's physical inability to appear) reflects some confusion as to the reasons for the delay in filing the required claim, she remained steadfast in her belief that final union notification was a precondition to a claim for state disability benefits.

[2] Effective September 13, 1982, as an urgency measure to afford greater protection to the claimant, the window period for filing was enlarged to the 41st consecutive day. (Stats. 1982, ch. 904, §§ 2, 4, pp. 3336-3337.)

## Issue Presented

As respondent Board succinctly states in its brief, the single issue to be decided is whether the proper standard of good cause was applied in denying relief to file a late claim for state disability benefits. We conclude that the wrong standard was applied requiring a remand and redetermination.

## DISCUSSION

■ Appellant's principal argument on appeal is that the Department and respondent Board incorrectly interpreted and applied the statutory requirement of good cause in rejecting her claim. We agree.

The statute itself provides no definition or explanation of the governing standard to be applied by the Department in granting relief from the 20-day time period for filing. However, as an integral part of the compensatory scheme under the Unemployment Insurance Code, the remedial provision must be construed liberally in order to promote the legislative objective of reducing the hardship on the disabled worker. (§ 2601; *Gibson* v. *Unemployment Ins. Appeals Bd.* (1973) 9 Cal.3d 494, 499 [108 Cal.Rptr. 1, 509 P.2d 945].) In undertaking that construction, we are guided by the legislative definition of "good cause" provided in related provisions dealing with disability benefit claims. Under both sections 2707.2 [claimant's time to appeal determination of eligibility may be extended for "good cause"] and 2707.4 [same: concerning time to protest benefits computation], the following definition is provided: "'Good cause,' as used in this section, shall include, but not be limited to, mistake, inadvertence, surprise, or excusable neglect."

■ Under well-established principles of statutory construction, these interrelated provisions must be construed together and harmonized if possible. (*Steilberg* v. *Lackner* (1977) 69 Cal.App.3d 780, 785 [138 Cal.Rptr. 378].) Additionally, when the same word or phrase is used, it should be given the same meaning in the related part of the law. (*Estate of Kirshbaum* (1968) 268 Cal.App.2d 155, 159 [73 Cal.Rptr. 711]; *Santa Clara County Dist. Attorney Investigators Assn.* v. *County of Santa Clara* (1975) 51 Cal.App.3d 255, 263, fn. 4 [124 Cal.Rptr. 115].)

■ The rigorous adjudication of good cause applied below would impose a standard of good cause far more demanding than the broader and more lenient one provided in the companion statutes. Use of such a restrictive interpretation would tend to subvert the clear legislative policy of liberal construction to ameliorate the "burdens which fall on the unemployed and disabled worker . . . " (§ 2601.) In light of the relevant principles dis-

cussed, we reject respondent's interpretation of good cause in favor of the more liberal standard supplied by the related legislative enactments.

■   Although we may properly assume the court exercised its independent judgment on the evidence (*Interstate Brands* v. *Unemployment Ins. Appeals Bd.* (1980) 26 Cal.3d 770, 775 [163 Cal.Rptr. 619, 608 P.2d 707]), on appeal we must determine whether the judgment is supported by substantial, credible and competent evidence and whether a different result was compelled as a matter of law. (*Bilyeu* v. *Unemployment Ins. Appeals Bd.* (1982) 130 Cal.App.3d 657, 667 [181 Cal.Rptr. 837].) Further, when the probative facts are undisputed—as herein—and require a different conclusion, the conclusion reached below may be disregarded. (*Amador* v. *Unemployment Ins. Appeals Bd.* (1984) 35 Cal.3d 671, 679, 685 [200 Cal.Rptr. 298, 677 P.2d 224].) Since we conclude that respondent's interpretation and use of an incorrect standard in denying a disability benefits claim on the grounds of untimeliness constituted error as a matter of law, we must reverse the judgment with instructions to the trial court to remand the matter to respondent Board for a redetermination of appellant's claim.

Judgment reversed and remanded for further proceedings consistent with the views expressed herein.

Newsom, J., concurred.

**HOLMDAHL, J.**—I concur with the majority opinion in the remand for further proceedings, but dissent from its reasoning, the test of "good cause" it establishes for section 2706.1 of the Unemployment Insurance Code, and its direction to the board to apply that test to the facts of this case.

In 1975, the Legislature amended the Unemployment Insurance Code section 2707.2[1] to define "good cause" for excusing a claimant's late filing of an appeal. In 1975, the Legislature, in precisely the same language, amended section 2707.4 to define "good cause" for excusing a claimant's late filing in protesting a computation of benefits.

In 1975, the Legislature did *not,* however, amend section 2706.1 to define its use of "good cause" for excusing the late filing of a "first claim." Thus, the identical phrase "good cause" was defined in two statutes, but left undefined in the third. At subsequent sessions in 1976, 1977, 1978, 1979, 1980, 1981, 1982, 1983, and 1984, the Legislature also refrained from providing the same—or any—definition for section 2706.1.

---

[1]All statutory references are to the Unemployment Insurance Code.

Notwithstanding this legislative history, the majority opinion uses "well-established principles of statutory construction" to conclude that the definition in sections 2707.2 and 2707.4 also is the definition in section 2706.1. Somehow, I arrive at the opposite conclusion: Had the Legislature so intended, it would have so acted in 1975, or in any subsequent year. Having failed so to act, I would conclude that its inaction was intended to be just that.

One might speculate as to the Legislature's policy considerations in failing to act, one of which might well have been that we are here concerned only with unemployment disability insurance, the state-mandated program funded entirely by employees from a tax on their wages and salaries. Section 2706.1 is the threshold provision for filing a first claim. A claimant goes no further, unless he meets that initial filing deadline or unless his late filing is excused "upon a showing of good cause." All insurance-type or other benefit programs have eligibility standards; all have some specification of those standards; and, all have prescribed time elements. Otherwise, virtually all human beings would qualify for virtually all benefits.

Once a claimant for unemployment disability benefits has properly filed under section 2706.1, however, he or she may face an adverse employer's report (§ 2707.2) or question the computation of benefits (§ 2707.4). Doubtless, neither event is likely to occur often out of the vast number of claims filed each year. When either event does occur, there are apparent policy reasons to construe "good cause" liberally to protect the claimant whose eligibility has almost been accepted (§ 2707.2) or already accepted (§ 2707.4).

Stated otherwise, there is at least one arguably apparent reason why the Legislature did not amend section 2706.1 as it did amend sections 2707.2 and 2707.4. Whatever its reason, I think this court should not perform that legislative function.

My concurrence in the reversal and remand is based on the hope that further proceedings may produce some authority more credible in interpreting the "good cause" section 2706.1 than appears in the record or than I have found. I consider the parties' briefing inadequate, as well as the administrative law judge's citation for his definition of "good cause" as being that "generally defined in the California Administrative Code."

I cannot, however, join my colleagues in their test of "good cause" nor the clearly implied mandate to apply that test in a manner reversing the

factual determinations of the administrative law judge, the board, and the superior court.