

# The Attorney General of Texas

July 7, 1982

**MARK WHITE**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

1607 Main St., Suite 1400
Dallas, TX. 75201-4709
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002-6986
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Gerald Hill, Chairman
House Committee on Elections
Texas House of Representatives
P. O. Box 2910
Austin, Texas    78769

Opinion No. MW-488

Re: Whether 47 U.S.C. section 315(b)(1) preempts article 14.09(B) of the Texas Election Code with regard to the rates a broadcaster in Texas may charge for political advertising

Dear Representative Hill:

You have asked five questions concerning article 14.09 of the Texas Election Code. That article provides in relevant part as follows:

> (B)    ...No advertising medium may charge a rate for political advertising in excess of the following:
>
> (1)    For advertising broadcast over a radio or television station, including a community antenna or cable television system, the rate charged shall not exceed the <u>lowest unit charge of the station for the same class, condition and amount of time for the same period</u>;
>
> (2)    For advertising printed or published by any other medium, the rate charged shall not exceed the lowest charge made for comparable use of such space for other purposes.... (Emphasis added).

Your questions are as follows:

> 1.    Is article 14.09(B)'s restriction on the rate radio and television stations can charge for political advertising the same as that imposed by 47 U.S.C. section 315(b)(1)? For example, suppose a station sells one fixed position one-minute announcement in prime time to commercial

advertisers for $15.  During the same period, an advertiser has bought 500 spots, however, and he paid only $5,000, or $10 each.  When a candidate comes to the station to buy one fixed position one-minute announcement in prime time, under article 14.09(B), does the station charge $15, as it would charge a regular commercial advertiser, or must it charge no more than $10, the lowest unit rate?

2.    In the situation discussed above, if one political candidate purchases 500 spots and is charged the reduced rate of $10 per spot, and another candidate purchases only one spot, should that candidate be charged the regular commercial rate of $15, or the lowest unit charge of $10?

3.    In article 14.09(B), which refers to 'the lowest unit charge of the station for the same class, condition and amount of time for the same period,' what does 'condition' of time mean?

4.    Does 47 U.S.C. section 315(b)(1) preempt article 14.09(B)?

5.    If a Texas broadcaster accepts advertising from candidates for state or local offices in other states, or on issues to be voted on in other states, must a broadcaster charge the rates prescribed by article 14.09(B) for that advertising?

The federal provision you cite, 47 U.S.C. section 315(b), provides as follows:

The charges made for the use of any broadcasting station by any person who is a legally qualified candidate for any public office in connection with his campaign for nomination for election, or election, to such office shall not exceed --

(1)    during the forty-five days preceding the date of a primary or primary runoff election and during the sixty days preceding the date of a general or special election in which such person is a candidate, the lowest unit charge of the station for the same class and amount of time for the same period; and

        (2)    at any other time, the charges made for comparable use of such station by other users thereof. (Emphasis added).

KVUE-TV, Inc. v. Moore, C.A. No. A-81-CA-446 (W.D. Tex. March 18, 1982), answers your fourth question. In that case, the court dismissed a constitutional attack upon article 14.09(B). One of the arguments was that article 14.09(B) is preempted by 47 U.S.C. section 315(b). Judge Nowlin responded as follows:

> When the Federal Election Campaign Act of 1971 (which included 47 U.S.C. section 315(b)) was enacted, it contained the following provision:
>
> > Sec. 403(a)    Nothing in this Act shall be deemed to invalidate or make inapplicable any provision of any State law, except where compliance with such provision of law would result in a violation of a provision of this Act.
>
> In 1974, this provision, codified as 2 U.S.C. section 453, was amended as follows:
>
> > The provisions of this Act, and of rules prescribed under this Act, supercede and preempt any provision of State law with respect to election to Federal office. (Emphasis added).
>
> As a consequence, Congress has expressly limited the boundaries of preemption exclusively to elections for federal office, and accordingly, Article 14.09(B) would not apply to such elections. Tex. Atty. Gen. Op. Nos. H-588 (1975) and H-433 (1974). Congress, however, clearly did not seek to foreclose legislatures from adopting laws which would regulate state elections. The regulation of state elections is wholly within the authority of the individual states. Oregon v. Mitchell, 400 U.S. 112 (1970); United States v. Tonry, 605 F.2d 144 (1979).

Id. at 11 (citations omitted). See also Head v. New Mexico Board of Examiners in Optometry, 374 U.S. 424 (1963); Exxon Corp. v. Governor of Maryland, 437 U.S. 117 (1978) (standards for determining whether federal statute preempts state statute).

In our opinion, the KVUE-TV case resolves your preemption question. It establishes that article 14.09(B) is preempted only in the context of elections for federal office.

The answer to your first three questions turns on the construction of the following phrase in article 14.09(B)(1): "lowest unit charge for the same class, condition and amount of time for the same period." This phrase first appeared in the statute in 1975. Acts 1975, 64th Leg., ch. 771, at 2269. The legislature has, however, never offered any guidance as to its meaning. The legislative history of article 14.09 also fails to shed much light on the problem. We must therefore construe this phrase in the manner which, in our opinion, best reflects the legislature's intent. Flowers v. Dempsey-Tegeler and Company, 472 S.W.2d 112 (Tex. 1971); Calvert v. British-American Oil Producing Company, 397 S.W.2d 839 (Tex. 1965).

This phrase is virtually identical to the phrase used in 47 U.S.C. section 315(b)(1). That section speaks in terms of the "lowest unit charge of the station for the same class and amount of time for the same period." Unfortunately, just as the Texas legislature failed to define the terms used in article 14.09(B)(1), Congress has not defined the terms used in section 315(b)(1).

The Federal Communications Commission [hereinafter "FCC"], however, has published a booklet entitled "The Law of Political Broadcasting and Cablecasting." 43 Federal Register No. 169 (Aug. 16, 1978). This booklet purports to be an "accurate restatement of existing rules and precedent" in the field of political broadcasting. Id. at 36343. The following discussion is found at page 36377:

LOWEST UNIT CHARGE

2. Section 315(b)(1) refers to 'the lowest unit charge of the station for the same class and amount of time for the same period...' The following definitions of these terms and examples of the ways in which the lowest unit charge is to be computed and applied are bases [sic] on the Commission's 1972 Public Notice on this subject cited above, unless otherwise indicated:

(a) What does 'class' of time mean? It refers to the kinds of rates that most radio and TV stations have, such as rates for fixed-position spots, preemptible spots, run-of-schedule spots, and special discount packages.

(b) What is the 'amount' of time? This term refers to the length of the period purchases, such as 30 seconds, 60 seconds, 5 minutes or 1 hour.

(c)     What is the 'same period?'  This term refers to the time of the broadcast day, such as prime time on TV, 'drive time' in radio, and Calss [sic] A, Class B and other classifications of time which a station may establish for rate-making purposes.

(d)     What does 'lowest unit charge' mean? Briefly it means that candidates must be give [sic] all discounts, based on volume, frequency or any other factor, that are offered to the station's most favored commercial advertiser for the same class and amount of time for the same period, regardless of how few programs or spots the candidate buys.  This includes discounted rates given to commercial advertisers but not published on the rate card.  Following are some examples:

(i)     A station sells one-fixed position one-minute announcement in prime time to commercial advertisers for $15.  If an advertiser buys 500 spots, however, he pays only $5,000 or $10 each.  If a candidate buys one spot he may not be charged more than $10.

(ii)     A station sells one preemptible 30-second spot in drive time to commercial advertisers for $10.  It sells 100 such spots for $750.  It must sell one such spot to a candidate for no more than $7.50.

(iii)  A station's lowest rate per spot for run-of-schedule one-minute spots is 1,000 for $1,000, but it charges $4 for a single run-of-schedule spot.  It must sell one such spot to a candidate for mot [sic] more than $1. (Emphasis added).

The "Commission's 1972 Public Notice," to which the foregoing discussion refers, is found at 34 F.C.C. 2d 510 (1972).  The following discussion is presented at page 524:

VI.  SECTION 315 -- LOWEST UNIT CHARGE

VI.1.Q.   What is the meaning of 'lowest unit charge of the station for the same class and amount of time for the same period' in section 315(b)(1)?

> A. The term 'class' refers to rate categories such as fixed-position spots, pre-emptible spots, run-of-schedule and special rate packages. The term 'amount of time' refers to the unit of time purchased, such as thirty seconds, sixty seconds, five minutes or one hour. The term 'same period' refers to the period of the broadcast day such as prime time, drive time, Class A, Class B or other classifications established by the station.
>
> Candidates are entitled to discounts, frequency and otherwise, offered to the most favored commercial advertiser for the same class and amount of time for the same period, without regard to the frequency of use by the candidate. This includes discount rates not published in a rate card but provided to commercial advertisers. Some examples follow:....

The FCC is charged with the duty of implementing section 315(b)(1). 47 U.S.C. §315(d). A construction of a statute by the agency charged with its execution will be followed unless there is compelling evidence that the construction is wrong. E.I. du Pont de Nemours and Company v. Collins, 432 U.S. 46 (1977); Lewis v. Martin, 397 U.S. 552 (1970). Clearly, the foregoing 1972 and 1978 discussions of "lowest unit charge" are FCC "constructions" of section 315(b). We are unaware of any evidence, compelling or otherwise, that these constructions are incorrect, and we therefore accept them as authoritative. In this context, we note that Congress has done nothing in intervening years to cast doubt upon them.

We next consider the relevance of these discussions in terms of our inquiry. As noted, there is little legislative guidance as to the meaning of the "lowest unit charge" phrase in the context of article 14.09(B)(1). We note, however, that this phrase was inserted in article 14.09 three years after its federal counterpart was added to section 315(b)(1). In our opinion, given the similarity between the state and federal phrases and the fact that the former was enacted three years after the latter, we may -- especially since there is no evidence to the contrary -- conclude that the terms used in the state phrase were intended to have the same meaning as the corresponding terms in the federal phrase. See Blackmon v. Hansen, 169 S.W.2d 962 (Tex. 1943) (where state statutory language is taken from federal statute, presumption is that Texas legislature knew of construction given federal law when state law adopted and intended to adopt federal construction); State v. Wiess, 171 S.W.2d 848 (Tex. 1943); High Plains Natural Gas Company v. Railroad Commission of Texas, 467 S.W.2d 532 (Tex. Civ. App. - Austin 1971, writ ref'd n.r.e.); see also Open Records Decision Nos. 309 (1982); 251 (1980) (construction given

exceptions to federal Freedom of Information Act, 5 U.S.C. §552, relevant in construing exceptions in Open Records Act, article 6252-17a, V.T.C.S.). In other words, the terms "lowest unit charge," "class," "amount," and "same period" have the same meaning in the context of both statutes.

The 1972 FCC discussion of "lowest unit charge" supplies the "meaning" of the federal terminology. Since the 1978 discussion adds nothing new to the FCC's 1972 construction but simply restates it, it is also relevant for our purposes. Because we are aware of no evidence which rebuts the presumption that in amending article 14.09 in 1975, the Texas legislature was aware of the FCC's construction of the federal terms and intended to adopt that construction, we conclude that this was most likely the case. The meaning ascribed by the 1972 and 1978 FCC statements to the terms used in the "lowest unit charge" phrase in section 315(b)(1) is, therefore, also the meaning which those terms have in the context of article 14.09(B). In this context, we note that what little enlightening legislative history of article 14.09(B) we have found, as obtained from tapes of the committee hearings, indicates that the legislature most likely intended this result.

We now turn our attention to the word "condition" in article 14.09(B)(1). In a supplementary letter to this office, you stated:

> Currently, broadcasters across the state are providing political advertising to candidates at the lowest unit charge rate, but are informing candidates that if a commercial advertiser requests time, and is willing to pay a higher rate, the previously purchased political spot will be preempted, with no notice to the candidate. As a protection against being preempted, candidates are being forced to pay a higher rate for their advertising than the legally prescribed lowest unit charge.

> If the 'condition' of a commercial rate advertisement includes a guarantee of specific placement, must a broadcaster provide the same 'condition' for political advertisers at the lowest unit charge rate, or is there a difference in the definition of 'condition' for political and commercial accounts?

The phrase which was originally proposed for inclusion in article 14.09 tracked the federal language: "lowest unit charge of the station for the same class and amount of time for the same period." During the committee hearings on the proposed amendments, the

legislature added "condition" to this phrase. The tapes of the committee hearings indicate that the change was made in an effort to address the situation you describe. The amended version of the phrase was eventually enacted into law.

In the context of article 14.09(B), "class... of time" refers to rate categories, such as fixed-position, preemptible, and non-preemptible advertising spots. Each rate category has its own unique characteristics; an obvious feature of "non-preemptible" time, for example, is that it does not permit preemption. Under the version of the "lowest unit charge" phrase which was originally proposed for adoption, a radio or television station would have been obliged to sell a particular amount of fixed-position, preemptible or non-preemptible advertising time to a political candidate at the lowest unit charge given its most favored commercial advertiser for the same kind and amount of time at the same period. Any stipulations inherent in the particular class of time being purchased would, therefore, have automatically been included as factors in computing the "lowest unit charge" price. Under the original version, however, the station would not have been obliged to include as a factor in the computation of this price any stipulation not inherent in the particular class of time being bought. In other words, if, for example, a guarantee of specific placement is an inherent feature of a particular class of time, it would have automatically been a factor in the computation; if, however, it is not an inherent feature of the class of time being purchased, the station would not have been required to include it as a factor.

In our opinion, the legislature included the word "condition" in article 14.09(B) precisely in order to rectify this problem. We conclude, therefore, that under the statute as finally enacted, any stipulations, whether inherent in the class of time being purchased or not, which are included as part of the sale of an advertising spot to a commercial advertiser must be used as a factor in computing the "lowest unit charge" figure for political candidates.

Thus, in answer to the hypotheticals set out in your first two questions: in each case the candidate could only be charged $10.

In order to answer your final question, we must focus upon the following phrase in article 14.09(B):

> No advertising medium may charge a rate for political advertising in excess of the following:.... (Emphasis added).

"Political advertising" is:

> anything in favor of or in opposition to any candidate for public office or office of a

> political party, or in favor of or in opposition
> to any political party, or in favor of or in
> opposition to the success of any <u>public officer</u>,
> or in favor of or in opposition to any measure
> submitted to a vote of the people, which is
> communicated in any of the following forms:....
> (Emphasis added).

Elec. Code art. 14.01(R). "Public office" is:

> any office created by or under authority of the
> laws <u>of this state</u>, that is filled by the voters.
> (Emphasis added).

Elec. Code art. 14.01(G). "Candidate" is:

> any person who has knowingly and willingly taken
> affirmative action for the purpose of seeking
> nomination or election to any <u>public office</u>.
> (Emphasis added).

Elec. Code art. 14.01(A).

"Political advertising" is, therefore, advertising which relates to a state or local office in <u>this</u> state. Advertising relating to candidates for offices in other states or to issues to be voted upon in other states does not fit in this category. Since the article 14.09(B) prohibition only applies to "political advertising," we answer your fifth question in the negative.

## S U M M A R Y

1. Under article 14.09(B) of the Election Code, a candidate could only be charged $10 in the following instance: A radio or television station sells one fixed position one-minute announcement in prime time to commercial advertisers for $15. During the same period, an advertiser has bought 500 spots, but paid only $5000, or $10 each. The candidate buys one fixed position one-minute announcement in prime time.

2. If, assuming the above facts, one political candidate purchases 500 spots and is charged the reduced rate of $10 per spot, and another candidate purchases only one spot, that candidate could only be charged $10 for the spot.

    3.  The word "condition" in article 14.09(B) insures that any stipulations not inherent in a given "class" of time which accompany the sale of an advertising spot to a commercial advertiser will be included as a factor in computing the "lowest unit charge" figure.

    4.  Article 14.09(B) is only preempted by 47 U.S.C. section 315(b)(1) in the context of elections for federal office.

    5.  If a broadcaster in Texas accepts advertising from candidates for state or local offices in other states, or on issues to be voted upon in other states, he need not charge the rates prescribed by article 14.09(B) for that advertising.

                              Very truly yours,

                              M A R K   W H I T E
                              Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by Jon Bible
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Jon Bible
Rick Gilpin
Patricia Hinojosa
Chip Holt
Jim Moellinger